Mrs. Pearl MYERS et al., Appellants,

v.

CONTINENTAL PANHANDLE LINES, Inc., et al., Appellees.

No. 6452.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 6, 1954.

Rehearing Denied Jan. 3, 1955.

Merchant & Fitzjarrald, Amarillo (Edward L. Poole, Amarillo, of counsel), for appellants.

Simpson, Clayton & Fullingim, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo (John E. Morrison, Jr., Amarillo, of counsel), for appellees.

PITTS, Chief Justice.

This is an appeal from a personal damage action as a result of an alleged three-way motor vehicle collision occurring upon a public highway in Potter County, Texas. Appellant Mrs. Pearl Myers, acting for herself and as next friend of her minor daughter Billie June McClaflin, filed suit against Continental Panhandle Lines, a corporation, hereafter referred to as the Bus Company, Plains Creamery, a corporation, hereafter referred to as the Creamery, and Dale Johnson individually, seeking personal damages for herself in the sum of $75,000 and personal damages for her said minor daughter in the sum of $65,000 against the named defendants jointly and severally. The record reveals that on or about December 19, 1952, appellants were passengers on a bus being operated by the Bus Company in an easterly direction on U.S. Highway 60, the same being operated in the south lane of a three-lane highway distinctly marked as such. The Creamery was operating its truck in a westerly direction in the center lane of the said highway while in the course of passing an automobile proceeding west in the north lane of the highway. Dale Johnson was operating his Ford automobile in an easterly direction also in the center lane of the highway, having entered the center lane from the south lane for the purpose of passing the Bus Company's bus. The Johnson car, while moving rapidly, collided with the Creamery truck near the center lane of the highway, knocking the truck out of control and directing its movement into the path of the Bus Company's bus causing a three-way collision that resulted in the alleged injuries as well as the instant death of both the bus driver and the truck operator.

The case of Plains Creamery, Inc. v. Denny, previously before this Court and reported in 277 S.W.2d 755, arose out of this same collision. We refer to that case for further material facts and circumstances as there related by some of the same witnesses who testified in the trial of these four cases consolidated here for trial. The evidence in the Denny case at least corroborates that given in this trial.

At the time this case was tried before a jury beginning on December 8, 1953, three other suits involving four additional plaintiffs and the same defendants, all arising out of the same collision, were tried simultaneously upon the court's own motion without objection from any party. All of the party plaintiffs were passengers on the same bus and had a common interest for the alleged claims against the defendants they each sued. In the trial, all parties appeared in person and through their respective attorneys of record except defendant Dale Johnson, who appeared only through his attorney who announced ready for trial for him. The court and jury heard the evidence in all of the cases jointly and only one charge was submitted to the jury covering the issues raised in all the cases, without any objections being made to the

said charge by any party. In answer to special issues submitted, the jury acquitted the Bus Company and the Creamery both, of any act of negligence proximately causing the collision in question and convicted Dale Johnson of four separate acts of negligence, each of which was found by the jury to be a proximate cause of the said collision. The jury further found that the collision was not the result of an unavoidable accident and that Dale Johnson's automobile collided with the Creamery truck just prior to the collision between the said truck and the bus being operated by the Bus Company in such a manner that Dale Johnson's negligence was the sole proximate cause of the collision between the truck and the bus, which resulted in the injuries sustained by appellants herein, as well as the sudden death of the bus driver and the truck operator. The overwhelming weight of the evidence supports these jury findings and such have not been challenged by appellants. Based upon the jury verdict, the trial court rendered judgment for appellants against Dale Johnson only, for the sums of $5,000 for Mrs. Pearl Myers and $7,500 for her daughter, Billie June McClaflin, from which part of the judgment no appeal has been perfected. Based upon the jury verdict, the trial court rendered judgment further denying appellants any recovery as against appellees, the Bus Company and the Creamery, from which part of the judgment only appellants have perfected an appeal.

This appeal and one other of the four cases tried jointly before the court are before us upon a lengthy record. Both appeals are before us on the same statement of facts heard at the trial of all four cases, consisting of 420 pages with exhibits attached, a second statement of facts of all evidence heard on motions for a new trial, consisting of 163 pages, and a third volume marked "Statement of Facts in Supplement," consisting of 120 pages recording the arguments of counsel in the trial of all four cases. The two appeals before us were submitted and oral arguments heard together. Because the two appeals arose out of the same transactions and are predicated upon the same statements of facts, which involve practically the same principles of law, a disposition of the other appeal follows immediately this one with practically the same principles of law applied thereto.

Through several points presented in this case, appellants charge error because of the refusal of the trial court to permit "appellants to question representatives of the Bus Company and Creamery in regard to the pleadings filed by them in this case;" and because of alleged jury misconduct, alleged improper argument of the Bus Company's counsel before the jury, and the admission of alleged improper evidence.

In their first point presented, appellants as plaintiffs did not seek to introduce or present and read to the jury the pleadings of defendants, appellees herein, the Bus Company and the Creamery, as admissions against the interests of the respective pleaders or for impeachment purposes, but they sought to introduce and present the Bus Company's pleadings as evidence against its co-defendant the Creamery and the Creamery's pleadings as evidenced against its co-defendant the Bus Company.

Pleadings filed in a case and presumably read to the jury are not before the court and jury as evidence but merely as a formal statement of facts to be established or proved by evidence. They cannot be legally considered for any other purpose unless they be introduced to show material admissions against the interests of the pleader or to impeach evidence the pleader may have offered in conflict with his pleadings. Barrera v. Duval County Ranch Co., Tex.Civ.App., 135 S.W.2d 518; Hughes v. Dopson, Tex.Civ.App., 135 S.W.2d 148; 17 Tex.Jur. 356–57, par. 119, and numerous authorities there cited. We know of no rule of law that would prevent any of the defendants in a case such as this from asserting common defenses if they choose, or from seeking to place the liability upon a co-defendant if the pleadings and a development of the facts so justify. Under the record here presented, the pleadings were offered in evidence for the purpose previously herein stated and the acts of the

trial court must be sustained in this matter and appellants' first point of error is overruled.

■■ Appellants charge error because of alleged misconduct of one juror, namely John A. Price, who allegedly gave untruthful answers to questions propounded to him by appellants upon voir dire examination before challenges for cause or peremptorily were made. An approved bill of exception reveals that upon such examination of the jury, counsel asked the jury panel generally if any juror or any one of his immediate family ever had a claim for personal injuries against a bus company, a railroad or anything else. One member of the panel answered that he had been injured himself and he was further interrogated. Again, a general question was propounded as to whether or not any of the panel or any members of their immediate families had ever been involved in an accident. The same member of the panel answered he had. Another member answered that his children had been involved in an accident. He was further interrogated and stated such would not influence him. A further general question was propounded as to whether or not anyone else or any member of his family had been involved in an accident or made any claim when another member of the panel answered "that his son-in-law had been hurt on the Santa Fe a little over a year ago." There is no showing whether this member of the panel was interrogated further about his son-in-law's injury or not. Panel member John A. Price did not respond to any of the general questions propounded because he was a man with a family of his own consisting of a wife and one child and neither he nor any member of his immediate family had ever been involved in an accident nor made any claim for personal injuries. After the jury verdict had been returned, it developed that in 1932 Price's brother died as a result of an automobile accident and in 1951 his sister was killed in an automobile accident as a result of which some insurance was paid to their father but the juror Price was quite sure no personal injury claims were made and he did not file any such claims in any event. According to the record, other general questions were propounded to the jury panel by other attorneys in the case and all of the questions generally, either directly or indirectly, inquired about claims made or injuries, if any, sustained by themselves or members of their immediate families respectively. According to the record, including the bill of exceptions relied upon by appellants, such was the import of every such question propounded to the jury panel. Twice counsel making the inquiries restricted the inquiries to the jurors or to their *immediate families* (emphasis supplied) and the fact that the question was renewed the third time without including the word "immediate" does not remove the purported intent when counsel and other attorneys had restricted the inquiries to the jurors and their "immediate families." According to the record, the deceased brother and sister of the juror Price were in no way dependent upon him for support. It must reasonably be presumed that the family of the juror Price, and certainly his immediate family, consisted only of himself and his wife and child. Stout v. Anthony, Tex.Civ.App., 254 S.W.2d 879, writ refused. For all of these reasons it is our opinion that the juror John A. Price did not untruthfully answer any questions propounded to him upon voir dire examination of the jury panel, as charged by appellants. Neither did he deceitfully conceal any information from anybody. In any event, there is no showing that the juror Price was biased or prejudiced in any manner during the deliberations. However, it may be more reasonably presumed that the said juror's leaning inclinations, if any, would have favored the injured appellants since he had lost a brother and a sister as a result of motor vehicle accidents. It should also be observed that, according to an examination of all the record, the matters about which appellants are here complaining resulted from general questions propounded to the jury panel during the voir dire examination by one of appellees' attorneys and not by appellants' counsel. The trial court, however, made findings at the request of appellants, among

which it found that no jury misconduct was shown and certainly no probable injury was shown. There is ample evidence to support these findings. For all of these reasons, appellants' second point is overruled. Eubanks v. Hopkins, Tex.Civ.App., 238 S.W. 2d 720, and other authorities there cited.

In their points three to seven, both inclusive, appellants charge in effect prejudicial jury misconduct during deliberations. They complain generally about the jury receiving and considering improper evidence from sources other than that given at the trial; they further complain of discussions by the jury before a verdict was reached, to the effect that certain defendants had insurance; that misstatements of the law were made by jurors during deliberations; and that the cumulative effect of various alleged acts of jury misconduct constituted reversible error. Under the record presented and the rules of law governing such the parties asserting misconduct of the jury during its deliberations have the burden of proving such by a preponderance of the evidence and such parties must also establish that such alleged misconduct probably resulted in injury to the complaining parties before a reversal would be in order on such alleged grounds. If the evidence is conflicting on the issues of misconduct, the decision of the trial court either way on the question is final. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. In support of their claims, appellants offered the testimony of three of the trial jurors at the hearing on their motion for a new trial, and appellees offered five such jurors, including the jury foreman, to refute appellants' charges of jury misconduct.

The jurors testified at length and, in our opinion, concerning any number of immaterial matters such as the order in which the issues were answered and others. The trial judge was liberal in admitting the testimony of all jurors but reminded counsel that immaterial matters and testimony not properly admitted would not be considered by him. In some instances, it appears that a effort was made to preserve or destroy the jury verdict by giving testimony concerning the mental processes by which a verdict was reached, which procedure is contrary to law and such testimony, when admitted, has no probative force. City of Dallas v. Hutchins, Tex.Civ. App., 226 S.W.2d 155; Finto v. Texas & N. O. R. Co., Tex.Civ.App., 265 S.W.2d 606.

A careful examination of all the testimony given by the jurors reveals that every material issue raised was controverted and the evidence strongly conflicting on some of them. At the request of appellants, the trial court made and filed its findings of fact and conclusions of law on the issues presented. Among others, it found in effect that during the jury deliberations no evidence was received or considered by the jury other than that given and heard during the trial; that during the deliberations no juror set himself up as an expert or gave expert opinions concerning issues being considered by the jury; that the jurors answered all issues without regard to the effect any of the answers might have on the result of the hearing; that the answers given to all issues were based solely upon the evidence heard during the trial; and that appellants failed to introduce any evidence of sufficient probative force to establish jury misconduct. It concluded that no jury misconduct was shown and that certainly no probable injury had been shown in any event.

In determining whether or not alleged misconduct was material and probably resulted in injury to the complaining parties, the court has the right to consider the whole record including the pleadings and all evidence heard on the motion for a new trial and that heard at the main trial. City of Dallas v. Hutchins, supra, and other authorities there cited. It was there further held that the trial court is no longer required to grant a new trial if it has only a reasonable doubt as to whether or not jury misconduct affected the verdict. It may also be observed that jurors, in weighing the evidence heard by them at the trial, have a

right to use their common knowledge and experience in life. If the evidence heard by the jurors at the main trial does not comport with the jurors' ideas of sound logic, the jurors have a right to say so. Otherwise, there could not be a free discussion of the evidence in the jury room. Maryland Casualty Company v. Hearks, 144 Tex. 317, 190 S.W.2d 62. The Court there further held that the trial court's findings based upon conflicting testimony must be resolved in favor of the validity of the jury verdict in the main case. For all of these reasons, appellants' points three to seven, both inclusive, are overruled.

▮▮ Appellants charge in their point eight that prejudicial error was committed by counsel for the Bus Company in arguments made to the jury by injecting the matter of insurance into the case. Usually the injection of the matter of liability insurance into a damage suit, such as this, in which no insurance company is a party, is error and of course it is usually reversible error if such is deliberately injected into the case by either party. However, to merely mention the word "insure" in an argument before a jury when it reasonably appears that the usage of the word has no connection with liability insurance and when no prejudice has been shown as a result thereof could hardly be sufficient grounds for a reversal. In connection with the argument about which appellants complain, it should be kept in mind that there were several serious injuries and appellees' motor vehicle operators were both killed as a result of this three-way collision. The four suits of which this is one were being tried together. The Bus Company was a party defendant to each of the four cases that were then being heard jointly by the jury and the same counsel was representing the Bus Company in each of the four cases. The intended usage of the word "insure" can be better determined if a portion of the argument leading up to such usage be here repeated. Having in mind the fatal injuries received as a result of the collision, counsel for the Bus Company in his argument to the jury said in part:

"Keep in mind that I am not for one second, men, and I say to you every one of these good people that are hurt in this accident, and God knows that I am as sorry and I can cry my eyes out, but if this bus company hasn't been negligent in bringing about this thing, fellows, then they are not responsible for it even though they are just as sorry as anybody can be about it.

"We are not for a minute telling you that these good people—we will stipulate with you that these people were riding on the bus and that they paid their fares and that they were passengers on the bus and that they got hurt out there, but that don't mean that we insure them, fellows, and you know it, and all of you men know this, every one of you."

At the time such argument was made, no plaintiff in either of the four cases being tried before that jury objected to any part of such argument. A complaint about such argument was first made in a motion for new trial. It reasonably appears from the argument in question that counsel meant to convey to the jury the thought that the Bus Company had not been negligent and was not therefore responsible for the injuries received and that the Bus Company certainly did not guarantee safe passage to its passengers in any event. When an issue was made of the matter, counsel for the Bus Company asserted he meant by the use of the phrase "we don't insure them" that the Bus Company did not "guarantee safe passage" for its passengers and such a construction of the language used is urged here by both of the appellees. In our opinion, a fair implication of the phrase used in connection with the other language by counsel in his argument did not inject the matter of liability insurance into the case. The language used by counsel immediately before the phrase in question and that used immediately following it support the interpretation appellees gave the usage of the said phrase. Following his statement in

effect that "we don't insure them" (meaning the passengers), counsel further said, "and you know it and all of you men know this, every one of you." It is a matter of common knowledge that a bus company does not "guarantee safe passage" of its passengers. Counsel was probably justified in assuming that all of the jurors knew that to be true. But the matter of liability insurance a bus company may carry for its own protection in case of a personal damage suit is not a matter of common knowledge and probably few, if any, would know about such. People may speculate about such but it could hardly be said that such is a matter of common knowledge. At any rate, no prejudice on the part of the jury or inflammatory results have been shown. There is an abundance of evidence to support the jury finding to the effect that the negligence of the defendant Dale Johnson who, just prior to the collision, had drunk four bottles of beer, was the sole proximate cause of the collision which resulted in the injury of all the party plaintiffs as well as the death of both of appellees' motor vehicle operators. The evidence, including Johnson's own testimony given in the Denny case previously before this court, clearly shows such to be true and this court may take judicial knowledge of the facts developed in that case in support of the facts presented in this case jointly tried. As a result of the jury verdict, judgment for damages was awarded appellants herein for the sums of $5,000 and $7,500, respectively, as against defendant Johnson, who was found to be the sole proximate cause of their injuries, and such sums appear to be reasonably supported by the evidence. Under the record, no injury has been shown as a result of counsel's argument in question

in any event. For these reasons appellants' eighth point of error is overruled.

 Appellants contend that prejudicial error was committed because the trial court admitted evidence concerning instructions the officers of the Bus Company had given their drivers about a late bus schedule. The record reflects that another party plaintiff in one of the cases being jointly tried with this case injected this matter into the trial and that one of the officers of the Bus Company testified that their bus operators were instructed not to make up the time when running on a late schedule. When such testimony was offered, appellants objected to its admission on the grounds that such would be hearsay, self-serving and immaterial. A careful examination of the record does not reveal any prejudicial error committed against appellants. The testimony may not have been material in this action but the matters of the bus schedule and the question of whether or not the bus had departed late from Amarillo on the occasion in question were raised by witnesses in other cases being jointly tried with this case, without objections. Such testimony was probably admissible in the case in which the plaintiff had raised the question and it may have been admissible in some other case being jointly tried. However, we find no prejudice or material error committed in this case or injury shown by reason of such testimony having been admitted in the joint trial. Appellants' ninth point of error is therefore overruled.

A careful examination of appellants' points of error and all of the record reveals no reversible errors committed. The judgment of the trial court is therefore affirmed.