**Jeffery Edward TAYLOR, Appellant,**

v.

**The STATE of Texas.**

No. 1037–02.

Court of Criminal Appeals of Texas.

July 2, 2003.

Charles Freeman, Houston, for Appellant.

Bridget Holloway, Asst. Dist. Atty., Houston, for State.

## *OPINION*

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

We granted review to determine the proper harm analysis to apply when a trial judge uses an improper hypothetical in voir dire to illustrate a proposition of law.[1] We will reverse the judgment of the Court of Appeals.

### A. Background

#### 1. *The facts*

Dennis Earl Hass was killed during a robbery. Appellant was indicted for the capital murder of Haas but was convicted of the lesser-included offense of aggravated robbery and sentenced to life imprisonment. That conviction was reversed and the case was remanded for a new trial. The State obtained a re-indictment for the aggravated robbery of Haas, with a prior felony conviction alleged for enhancement. During voir dire of the second trial, the trial court instructed the jury that the punishment range for aggravated robbery was 5 to 99 years or life and a fine not to exceed $10,000.[2] The trial court instructed the jury that this wide range of punishment was intended to cover the wide variety of circumstances in which such a crime may be committed:

> And, ladies and gentlemen, you can see that's a pretty broad range of punishment. And I suggest to you the Legislature has given us that broad range of punishment because there are all kinds of facts and circumstances that may constitute the offense of aggravated robbery committed by all types of individuals.

To illustrate the necessity for such a wide range, the trial court gave the venire two hypothetical situations, one that might justify punishment at the low end of the range and another that might justify punishment at the high end:

> Let's say you have a 17–year–old kid who gets his high school girlfriend pregnant and the child is born with a health

---

1. Given our disposition of the case, we dismiss the State's first ground for review.

2. *See* TEX. PEN. CODE § 29.03(b); § 12.32.

defect and is ill. And so the 17–year–old, in desperation to get money to care for the sick child, goes to a Stop–N—Go with, let's say, an unloaded gun; and tells his friends he doesn't want to hurt anybody, just go in and get the money out of the cash register to help take care of the medical expenses for his child. And the 17–year–old does that. Goes in, gets the money out of the register and goes and gives the money to the folks who are taking care of the kid. And he goes and turns himself into police right after, turns over the money and tells police what he did. *And the person who was robbed at the Stop–N–Go at the time of trial comes in and tells the jury that* he didn't know the gun was unloaded at the time he was in fear but that the 17–year–old didn't hurt him *and he doesn't want to see the 17–year–old go to prison.* The kid's never been in trouble—

[Colloquy involving defense objection]

And, ladies and gentlemen, then the 17–year–old kid who is we established in the trial never been in trouble with the law before, first offense in the criminal justice system, that may be a situation where a jury would want to consider something on the lower end of the punishment scale.

Your contrast to that situation is where an individual stalks an elderly woman, goes to the Randall's store where she shops, goes in several weeks ahead of time, watching what comes and goes, sees this woman who shows up every week at the same time and decides she's going to be a target and waits until she comes out of Randall's, follows her to her home and as she's about to get out of the car points a pistol to her face, demands items of property, and takes her property, he pistol whips her to the point where after the robbery she is rendered an invalid. That could be a situation where the jury might consider on the upper end of the scale.

(Emphasis added). As shown in the above quotation, defense counsel interrupted the first hypothetical to interpose an objection. The objection was: "Objection, unlawful punishment recommendation. To make a recommendation like that, victim to jury punishment recommendation would be unlawful." The trial court denied the objection.

Upon finishing the hypotheticals, the trial court continued to admonish the jury that aggravated robbery occurred in a variety of circumstances that required the jury to keep an open mind concerning the full range of punishment:

So, you can see that aggravated robbery comes in all shapes, forms and sizes. The law says as a juror—as a potential juror you keep an open mind to the full range of punishment until you hear the facts of the case and you get to decide where along in the punishment scale the appropriate punishment should be. Anywhere between five—whether it should [sic] five or life or anywhere in between.

The trial court then emphasized to the jury that only the jury—not the court or the lawyers—can decide the proper punishment, and the jurors should not decide punishment, or rule out any punishment within the punishment range, until hearing all the facts:

And you get to decide what's appropriate. I can't tell you an appropriate case for five years. I can't tell you an appropriate case for life. And the lawyers can't tell you. You notice at this point I've not discussed the facts of this case. ·One reason is I don't know the facts of this case. I will learn the facts along with the 12 of you chosen. When the lawyers have an opportunity to visit with

you the law prohibits them from discussing the facts of this case. In other words, the law contemplates you not prejudge the case at this point because you don't know the facts. The lawyers can't ask you and the Court will not ask you at this time. It would be unfair to ask you that because you don't know the facts. What the law envisions you not sit there at this point and think: Aggravated robbery, no way could I ever consider five or no way could I consider life or anywhere in between until you hear the facts of the case. And you get to decide what's appropriate for five years, what's appropriate for life or anything in between based on the facts of the case.

After these initial instructions, the trial court proceeded to question the panel members row by row on their ability to consider the full range of punishment. In this vein, the trial court asked whether jurors could consider the full range of punishment, whether they could consider the minimum punishment of five years in an appropriate case, and whether they could consider the maximum punishment of life in an appropriate case. For various individuals that expressed difficulty with considering the minimum punishment, the trial court sometimes rephrased the question in the negative to ask if the prospective juror was saying that under no facts and circumstances could he consider the minimum punishment in an aggravated robbery case. The trial court did not mention the hypotheticals during this examination. In response to the trial court's questioning, seven prospective jurors stated that they could not consider the minimum punishment in an aggravated robbery case. One prospective juror expressed difficulty with assessing a life sentence.

The State revisited the subject during its portion of voir dire and offered its own hypothetical of a possible situation justifying the minimum punishment:

Let me talk to the other end of the folks, minimum of five years. There were a number of you that felt that way and I want to know—and I'm going to give some type of examples. I'm not asking you to decide, yeah, I could do it in that case; or yeah, I could do it in this particular situation. I'm wondering if your mind's a little more open at this point. You've got a 17–year–old male defendant or a 90–year–old male defendant and committed an aggravated robbery. And during the course of the aggravated robbery, going through the neighborhood, sees a pie on the window seal and walks up and takes the pie. And then the person comes out who's baked the pie and says, "Don't take the pie." And pulls—this 17–year–old or 90–year–old lady pulls out this rusty old pocket knife, "Don't take the pie back or I might hurt you with the knife." Or maybe she will. The lady comes to take the pie and cuts her on the little finger and leaves a scar with the rusty knife. Okay. The 17–year–old or 90–year–old leaves the scene, gets half a block away then realizes done something really terrible. she takes the pie back, insists that the victim call the police, waits till the police get there, gives a confession, does community service and gets counseling *and the victim actually comes in and asks for the person to get the minimum, five years.*

No objection was made to the State's hypothetical. After giving its hypothetical, the State requested a show of hands for those who had earlier stated they could not consider the minimum punishment of five years. The State requested those who had changed their minds to put their hands down. The record does not reflect at this point whether anyone put his hand down, although a later examination reveals that

at least one prospective juror did not put her hand down. Appellant asked no questions regarding the range of punishment.

Six of the seven jurors who had expressed an inability to consider the minimum punishment of five years were challenged for cause by both sides and excused by the trial court. The seventh was never reached, as a panel of twelve jurors had already been selected.

At the close of voir dire, appellant raised again his claim that the trial court's hypothetical was improper and asked the trial court to quash the venire panel. Relying upon our prior decision in *Sattiewhite v. State*,[3] where we held that an expert witness could not express an opinion on what punishment should be assessed,[4] and some cases from the courts of appeals, appellant argued that the trial court had misstated the law because victim punishment recommendations are inadmissible. The prosecutor responded that, in the interest of justice, he would not object to a victim recommending leniency for the defendant. The trial court denied the motion to quash. Appellant then argued that the jury would expect to hear a favorable victim punishment recommendation and would hold it against him if they did not hear such a recommendation. Appellant subsequently informed the trial court that, due to the trial court's hypothetical, he was challenging for cause every member of the venire. He also asked for additional peremptory challenges. These requests were denied.

The jury convicted appellant of aggravated robbery. At the punishment phase of trial, appellant pled true to the enhancement paragraph. After the State presented its evidence, appellant informed the trial court that he was expressly waiving his right to present mitigating evidence pursuant to procedures suggested in *Mosley v. State*.[5] Defense counsel stated that "one of the reasons" for making such a waiver was the trial court's hypothetical given during voir dire. Defense counsel expressed a fear that introducing evidence would cause the jury to hold against his client the failure to produce a victim punishment recommendation:

> I'm literally afraid to put on evidence because of issues that I could not—I cannot offer punishment recommendation because the Court of Criminal Appeals *Satterwhite* [sic] and the Court of Appeals in *Gross* and *Hughes* have said—and *Johnson*, recently my case, have said that punishment recommendations, sentencing recommendations are inadmissible during a separate hearing on proper punishment. So, therefore, if the jury is expecting this stuff—because the State has said and the trial court has agreed that they can hear it and I don't put it on, it's going to make them speculate as to me not being able to come up with a person to make these kinds of recommendations. And it's going to hurt my client.

Defense counsel then made an offer of proof concerning mitigating testimony from appellant and appellant's father:

> He would have testified yes, he loves his son, that he's aware of the fact that his son has been in—presently incarcerated for this offense since the 21st of September of 1993 and continuously, that is, until today. . . . And that he has received a high school education as well as additional certificates while he was in prison,

---

**3.** 786 S.W.2d 271 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990).

**4.** *Id.* at 290–291.

**5.** 983 S.W.2d 249 (1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

and there have never been any negative events that have occurred involving him in prison that would require him to have served additional time in solitary confinement or have any points taken away from him because of his behavior. But he's engaged in exemplary—my client would also take the witness stand and make these statements as well, the very same set of statements about himself and his behavior in prison.

In the charge on punishment, the jury was instructed to find the enhancement allegation true and to assess punishment within the range of 15 to 99 years or life, and at its option, a fine not to exceed $10,000.[6] The jury assessed punishment at 50 years and a $10,000 fine. Appellant appealed, complaining, among other things, that the trial court committed reversible error by including a victim's punishment recommendation in its voir dire hypothetical. The venire had never been questioned about the 15 to 99 years or life range for a first degree felony enhanced by a prior conviction.

### 2. *Court of Appeals opinion*

Relying upon *Sattiewhite* and several court of appeals opinions, the Court of Appeals held that the trial court's hypothetical was a misstatement of law because a victim's punishment recommendation is inadmissible.[7]

The Court of Appeals then proceeded to conduct a harm analysis under four different standards. First, the court addressed under *Morrow v. State*[8] and *Lane v. State*[9] what it considered to be an automatic or presumptive harm analysis.[10] The court held that the present case was similar to those cases and hence the error was harmful.[11] Second, it addressed harm under cases such as *Williams v. State*[12] and *Jackson v. State*,[13] which held that a misstatement of law could be harmless if the jury did not decide the issue to which the misstatement related.[14] The court found that the error in the present case was not like the errors in those cases, and therefore, those cases could not be used to support the proposition that the error here was harmless.[15] Third, the Court of Appeals analyzed the case under the standard for constitutional error, found in Texas Rule of Appellate Procedure 44.2(a).[16] It concluded that the error was constitutional in nature because the right to pose proper questions in voir dire and the right to intelligently exercise peremptory challenges are included in the constitutional right to counsel and because, under *Morrow*, a misstatement of law in voir dire denied the defendant due course of law and the effective representation of counsel

---

6. This is the punishment range for a first degree felony enhanced by one prior felony conviction. TEX. PEN. CODE § 12.42(c)(1).

7. *Taylor v. State*, 74 S.W.3d 457, 462–464 (Tex.App.-Corpus Christi 2002).

8. 753 S.W.2d 372 (Tex.Crim.App.1988).

9. 743 S.W.2d 617 (Tex.Crim.App.1987).

10. *Taylor*, 74 S.W.3d at 464.

11. *Id.*

12. 622 S.W.2d 116 (Tex.Crim.App.1981).

13. 822 S.W.2d 18 (Tex.Crim.App.1990).

14. *Taylor*, 74 S.W.3d at 465–466.

15. *Id.*

16. *Id.* at 466–467. Rule 44.2(a) provides:
    *Constitutional error.* If the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

under the Texas Constitution.[17] The court further found that the error had not been proven harmless beyond a reasonable doubt.[18] Finally, the Court of Appeals analyzed the case under the standard for non-constitutional error, found in Texas Rule of Appellate Procedure 44.2(b).[19] It concluded that the error was harmful even under that standard.[20] In its discussion under various harm analyses, the Court of Appeals isolated two basic harms flowing from the allegedly erroneous hypothetical: (1) impeding proper jury selection—by preventing the defendant from identifying and excluding jurors who are challengeable for cause [21] and (2) adversely affecting the jury's deliberations at trial—by creating an expectation in the minds of the jury that the defendant ought to procure the victim to give a favorable punishment recommendation,[22] and in turn, by causing the defendant to refrain from introducing mitigating evidence.[23] Appellant also alleges, and the Court of Appeals opinion may impliedly suggest,[24] that the trial court's hypothetical also denied appellant the intelligent exercise of peremptory challenges.

### 3. *The State's petition*

In its second through fourth grounds for review, the State complains about harm analyses conducted by the Court of Appeals and that court's ultimate conclusion that harm was established. First, the State contends that changes in the law render inapplicable the presumption of harm found in *Morrow* and *Lane*. Second, it contends that the Court of Appeals erred in concluding that the trial court's error (if any) was constitutional in nature. Finally, the State contends that any error was harmless because (1) the hypothetical was not expressly used to qualify the venire, (2) all selected jurors specifically stated they could consider the full range of punishment, (3) the hypothetical was not implicated in the present case because probation was not an issue and the victim, being dead, was not available to testify, (4) the hypothetical was never mentioned again, (5) the trial court specifically emphasized that the jury had to decide for itself what situation called for the minimum punishment, and the trial court could not tell the jury what that situation might be, (6) the facts of the crime set out in the hypothetical, rather than the victim's recommendation, created the situation where the minimum punishment might be appropriate, and (7) the jury showed that the hypothetical did not adversely influence its decision by sentencing appellant to only 50 out of a possible 99 years.[25]

17. *Taylor*, 74 S.W.3d at 466.

18. *Id.* at 467.

19. *Id.* at 467–468. Rule 44.2(b) provides: "*Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

20. *Taylor*, 74 S.W.3d at 468.

21. *Id.* at 465, 467, 468.

22. *Id.* at 466 n. 12.

23. *Id.* at 467 n. 13.

24. *Id.* at 466.

25. It could also be argued that appellant's failure to object to the *State's* hypothetical, which included an even more obvious victim punishment recommendation for the minimum sentence, may have forfeited or rendered harmless any objection to the trial court's hypothetical. *See McFarland v. State*, 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993)("Where the same evidence or argument is presented elsewhere during trial without objection, no reversible error exists"). However, we will not address this potential argument because it was not raised by the parties or addressed by the

## B. Analysis

We will assume, without deciding, that the trial court erred in its hypothetical. We turn to the issue of harm.

### 1. *The proper standard*

To the extent that prior cases (including *Morrow* and *Lane*) suggested that harm is automatic, they were overruled by *Cain v. State,* where we held that all errors are subject to a harm analysis except those labeled by the United States Supreme Court as structural.[26] Relying upon *Cain* in *Gonzales v. State,* we held that voir dire error involving a trial court's failure to allow a proper question, which was previously exempt from a harm analysis, would no longer be exempt from the application of the harmless error standards.[27]

But *Morrow* and *Lane* may simply stand for the proposition that the errors in those cases could not be found harmless beyond a reasonable doubt, under the prevailing harm analysis at the time. Both cases involved hypotheticals designed to determine whether jurors could distinguish between the terms "intentional" and "deliberate."[28] In *Lane,* the hypothetical stated that a capital murder could occur if the defendant fired a shot at the ceiling and the bullet ricocheted and hit the victim.[29] But intentionally firing a shot at the ceiling does not demonstrate the "intentional murder" component of capital murder; instead, the hypothetical demonstrated an offense that was, at most, felony murder.[30] Every prospective juror who had difficulty distinguishing between the terms "intentional" and "deliberate" was given the faulty hypothetical as an illustration.[31] After exhausting his peremptory challenges and requesting more, the defendant was unable to prevent one of these prospective jurors from sitting on the jury.[32] We found that "[t]he harm is evident."[33] In *Morrow,* we went further. The hypothetical in that case was that a defendant intentionally pulled the trigger of a gun and shot the victim in the leg, and the victim later died of medical complications.[34] We held that, because the faulty hypothetical in that case was given during the State's voir dire, before defense questioning began, prospective jurors were effectively immunized from defense attempts to challenge for cause and at the same time rendered challengeable because the hypothetical instilled in them a bias against the law.[35] We found that, under the circumstances presented, harm was presumed and further found that the hypothetical so distorted voir dire as to deny the defendant due course of law and the effective assistance of counsel in violation of the Texas Constitution.[36]

These cases are distinguishable from the case at bar in two respects. First, both

Court of Appeals and involves a significantly different type of harmlessness theory from the ones presented.

26. 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

27. 994 S.W.2d 170, 171–172 (Tex.Crim.App. 1999).

28. *See Morrow* and *Lane,* generally. For murders committed before September 1, 1991, there was (and still is) a punishment issue that asks whether the murder was committed "deliberately." *See* TEX. CODE CRIM. PROC., Art. 37.0711, § 2(b)(1).

29. *Lane,* 743 S.W.2d at 622.

30. *Id.* at 627.

31. *Id.* at 627.

32. *Id.* at 629.

33. *Id.*

34. 753 S.W.2d at 373.

35. *Id.* at 376

36. *Id.* at 376–377.

were decided before the advent of the new harmless error rules that were adopted in 1997. Former Rule of Appellate Procedure 81(b)(2) provided that all errors were subject to reversal unless found harmless "beyond a reasonable doubt." [37] Under the new rules, a distinction is made between constitutional and nonconstitutional errors, with the latter being governed by a more lenient "substantial rights" analysis found in Rule 44.2(b). Second, those two cases are materially different from the present one in that they implicate constitutional protections. This leads us to the Court of Appeals's next holding: that the error in the present case is constitutional in nature. The Court of Appeals has misconceived the nature of the error here and the court's reliance upon *Morrow* and *Lane* is misplaced.

The *Morrow* and *Lane* hypotheticals amounted to misstatements about the elements of capital murder—allowing a jury to find mere intentional conduct, rather than an intentional *killing*, sufficient to prove capital murder. And in so doing, the hypotheticals also mislead the jury about deliberateness—leading the jury to believe that the deliberateness punishment issue was satisfied by a mere intentional killing. Relieving the State of the burden of proving an intentional killing at the guilt stage implicates at least two constitutional guarantees: a due process or due course of law right not to be convicted on proof of less than the elements of the crime and the right to a jury trial on all elements of the crime.[38] Misdefining the deliberateness issue similarly implicates the defendant's constitutional right to have the State prove that punishment issue.

But the present case does not involve a constitutional issue. The trial judge did not misstate the range of punishment, nor did she misstate the law regarding punishment enhancement, which was the only discrete punishment issue to be decided in this case other than the assessment of punishment itself. At most, the trial judge mistakenly presented, as eligible for the lower range of punishment, a situation that could not in fact be presented to a jury because some of the facts were based upon evidence the court may not be permitted to admit. The trial judge did not, however, say that *only* her proposed hypothetical would be eligible for the minimum punishment. She carefully told the jury she could not tell them what circumstances would be eligible for the minimum penalty. The jury was not foreclosed from considering for the minimum punishment a scenario that did not include a victim's statement about punishment, nor was the jury told it necessarily had to consider for the minimum punishment the scenario offered by the trial court. Rather, the trial court's hypothetical was used simply to illustrate that there might be a situation where mitigating circumstances would warrant imposing the minimum sentence. We hold that the inclusion of inadmissible evidence in a hypothetical designed to illustrate the range of punishment does not by itself rise to the level of constitutional error.

Constitutional error might be shown if the evidence were inadmissible for constitutional reasons. But we find nothing in the federal or state constitutions that would prevent a victim from recommend-

---

37. *See* Former TEX. R. APP. P. 81(b)(2)(1996).

38. *See United States v. Gaudin*, 515 U.S. 506, 509–510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *California v. Roy*, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996); *Neder v. United States*, 527 U.S. 1, 9–10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

ing leniency in the matter of punishment.[39]

We are also unpersuaded by the Court of Appeals's other reasons for finding the error to be constitutional in nature. Although the Texas Constitution's right to counsel encompasses the right to ask proper questions in order to intelligently exercise for cause and peremptory challenges,[40] appellant was not prevented from asking any questions of the venire. The fact that an improper hypothetical may have had the indirect effect of making adequate voir dire more difficult is a factor to consider in a harm analysis, but it does not transform a nonconstitutional error into a constitutional one.[41] We conclude that the proper harm standard is the one found in Rule 44.2(b), applicable to nonconstitutional errors.

### 2. *Harm*

Because the Court of Appeals also conducted a harm analysis under Rule 44.2(b), we next determine whether the alleged error was harmful under that rule. As noted above, the harm alleged is: (1) preventing defense counsel from ascertaining and striking for cause jurors who could not consider the full range of punishment, (2) preventing defense counsel from intelligently exercising peremptory challenges, (3) impeding the jury's ability to properly assess punishment at trial by instilling the idea that victims can make punishment recommendations—causing jurors to hold against appellant any failure to produce a witness to give a favorable recommendation, and (4) causing the defendant to forego offering mitigating evidence.

■ Concerning the ability to mount challenges for cause, we initially point out that the victim recommendation was a small part of a detailed hypothetical with many other circumstances presented as mitigating, including (1) youth, (2) a sympathetic motive (stealing money for a sick child), (3) a specific intent not to hurt anyone, (4) unselfish use of the proceeds, (5) prompt, self-initiated surrender to the authorities, (6) an unloaded weapon, and (7) never being in trouble with the law before. Even with all of these mitigating factors, seven prospective jurors indicated that they could not consider the minimum five-year penalty, and all of them were dismissed for cause. To find harm, one must believe that there were jurors who would not have been able to consider the minimum punishment absent the victim's recommendation, and that these jurors were not discovered because of the inclusion of that one small fact in the hypothetical. To these slim odds must be added a couple of other factors that attenuate the likelihood of harm even further.

For starters, if the alleged harm is that appellant was precluded from discovering

---

39. The Supreme Court has indicated, in death penalty cases, that the federal constitution does not permit family members of the victim to give punishment recommendations adverse to the defendant. *Booth v. Maryland*, 482 U.S. 496, 508–509, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *Payne v. Tennessee*, 501 U.S. 808, 830 n. 2, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Of course, the hypothetical utilized here is not a death penalty case, involves the victim rather than family members, and involves a favorable rather than adverse recommendation.

40. *Raby v. State*, 970 S.W.2d 1, 10 (Tex.Crim. App.1998).

41. *See Chavez v. State*, 91 S.W.3d 797, 800–801 (Tex.Crim.App.2002)(holding that failure of a trial court to adhere to a statutory procedure related to a constitutional provision is a violation of the statute, not a violation of the constitutional provision itself); *see also Potier v. State*, 68 S.W.3d 657, 666 (Tex.Crim.App.2002)(erroneous interpretation of state-law rule to exclude evidence does not usually violate constitutional compulsory process guarantee).

jurors who could not consider the five-year minimum for an unenhanced offense, there was no harm because the jury was not in fact called upon to consider a five-year minimum punishment. Because appellant pled true to the enhancement paragraph and the jury was instructed to find the enhancement true, the minimum punishment was *fifteen* years.

In several cases, we have held that no harm occurs where the jury was not called upon at trial to decide the issue that might have been a basis for a challenge for cause. In *Williams v. State*, the defendant contended that the trial court misinformed the venire that a confession was inadmissible only if it was obtained by torture.[42] After holding that error was forfeited by a failure to object, we remarked that the error was also harmless because no evidence in the record raised the voluntariness of the confession.[43] In *Jackson v. State*, the defendant contended that the prosecutor had misstated the law by saying rehabilitation was not a proper consideration in answering the future dangerousness special issue.[44] We found the error to be harmless because no evidence of rehabilitation was introduced at trial.[45] In *Jones v. State*, a capital murder case, the defendant complained that the trial court erroneously prevented him from questioning jurors about parole laws applicable to the lesser-included offense of murder.[46] We held that any error was harmless because the jury convicted the defendant of capital murder, and therefore the jury did not

receive a charge on parole law for the lesser offense of murder.[47] Finally, in *Dowthitt v. State*, another capital murder prosecution, the defendant complained that the prosecutor used an improper hypothetical to illustrate a circumstance in which probation would be an acceptable punishment for the lesser-included offense of murder.[48] The defendant claimed that the prosecutor's hypothetical was not an example of murder but of the offense of "aiding suicide." [49] We held that any error was harmless because appellant was convicted of capital murder, so that "any erroneous or misleading hypotheticals to prospective jurors for the lesser-included offense of murder made no contribution to appellant's conviction or punishment." [50]

Under the reasoning of these cases, no harm stems in this case from the failure to discover jurors who could not consider the five-year minimum. The five year minimum was not at issue. While there was a minimum of fifteen years, fifteen years is a significantly heavier sentence than five years. A person who cannot consider five years for a serious offense might well be able to consider fifteen, even with additional aggravating factors. Even if we knew for certain—which we do not—that a person who could not consider five years served on the jury, we could not infer that such a juror would have been unable to fairly consider the fifteen-year minimum sentence for an enhanced offender. Any

---

**42.** 622 S.W.2d 116, 119 (Tex.Crim.App.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982).

**43.** *Id.*

**44.** 822 S.W.2d 18, 25 (Tex.Crim.App.1990), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3034, 125 L.Ed.2d 722 (1993).

**45.** *Id.* at 26.

**46.** 843 S.W.2d 487, 498 (Tex.Crim.App.1992).

**47.** *Id.*

**48.** 931 S.W.2d 244, 250–251 (Tex.Crim.App. 1996).

**49.** *Id.*

**50.** *Id.* at 251.

attempt to draw such an inference would be speculation.

It is true that the trial court did not limit its hypothetical to five years but offered it as an example where the jury may want to consider the "lower end of the punishment range." [51] However, if the alleged harm is that appellant was precluded from discovering jurors who could not consider the *fifteen*-year minimum for an enhanced offense, there is no harm because appellant did not try to discover those jurors. Prospective jurors were never informed of the punishment range for an enhanced offense and never asked whether they could consider a fifteen-year minimum punishment.

As for the claim that the hypothetical prevented the intelligent use of peremptory challenges, neither appellant nor the Court of Appeals explain how the trial court's hypothetical prevented the intelligent use of peremptory challenges, and we do not see how such would be the case. The cases that appellant relies upon deal generally with the refusal of a trial court to allow defense counsel to question the venire. In such cases, the defendant is prevented from obtaining information. The hypothetical in this case, on the other hand, in no way prevented appellant from obtaining information. In fact, regardless of whether a different question would have provided him with more helpful information, he had more information after the question was asked than he did before. Finally, the trial court did not prohibit appellant from formulating his own hypotheticals or asking his own questions regarding the range of punishment.

Nor is there any substance to the claim that the hypothetical would cause the jury to hold against the defendant a failure to present testimony giving a favorable punishment recommendation. The victim was deceased; the jury could not have rationally expected the defendant to present such evidence from the victim. If the jury held the victim's absence against appellant, it would be due to the fact that the victim was *killed during the robbery,* a fact the jury could legitimately take into account, and that fact would outweigh any possible prejudice resulting from the absence of a favorable victim punishment recommendation.

Perhaps the defendant is claiming that the jury would assume he could present other witnesses, such as an expert, to give a favorable recommendation as to punishment. But that was not the trial court's hypothetical, which involved only the victim. A punishment recommendation from a non-victim—especially an expert—entails a situation significantly different from a recommendation from the victim, who, at least arguably, was in a position to give an opinion based rationally upon his observations of the crime itself [52] and who is the one who suffered from the crime in the first place. There is no reason to believe that the trial court's hypothetical would instill in the jury an expectation that the defendant present a favorable punishment recommendation through non-victim testimony.

Finally, we are not persuaded that defense counsel's failure to offer mitigating evidence is a harm resulting from the trial court's hypothetical. Defense counsel's reciting of *Mosley* suggests a different purpose for declining to offer mitigating evidence: to prevent the State from offering

---

**51.** Yet the hypothetical, by its own terms, did not apply to an enhanced offender since it assumed a defendant "who had never been in trouble with the law before."

**52.** *Fryer v. State,* 68 S.W.3d 628, 631, 631 n. 22 (Tex.Crim.App.2002).

victim impact testimony.[53] If so, defense counsel was successful, as the State did not offer that kind of evidence. Regardless, we see no connection between the ability to offer victim recommendation testimony and appellant's failure to offer mitigating evidence through his own testimony and his father's. If the jury were inclined to hold against appellant a failure to offer testimony giving a favorable punishment recommendation, such would seem to be the case regardless of whether he offered other mitigating evidence. Even if there were such a connection, because the jury could not reasonably expect the victim to testify, appellant's offering of mitigating evidence would not have caused the jury to hold the absence of favorable victim testimony against him.

Any error associated with the trial court's hypothetical was harmless. We reverse the judgment of the Court of Appeals and remand the case for consideration of appellant's remaining points of error.

MEYERS, J., filed a dissenting opinion.

PRICE and JOHNSON, JJ., concurred in the result.

MEYERS, J., filed a dissenting opinion.

## OPINION

I disagree with the majority that the issue in this case is simply "the inclusion of inadmissible evidence in a hypothetical designed to illustrate the range of punishment." The issue instead is a misstatement of the law which resulted in a jury that was not properly qualified to consider the range of punishment. The defense attempted to resolve this by moving to quash the venire and then by challenging for cause each veniremember. The trial judge denied both requests and the jury

was subsequently chosen from a panel of veniremembers who had effectively been told by the trial judge that a victim can tell the jury if he or she wants the defendant to be leniently punished.

The right to an impartial jury is a constitutional right, as is the right to the assistance of counsel. The trial judge's misinterpretation of the law and denial of appellant's motion to quash the venire interfered with appellant's ability to conduct a defense and with the intelligent use of peremptory strikes. Because the entire panel was biased on the issue of punishment and the trial judge denied the challenges for cause, appellant was forced to use peremptory strikes for veniremembers who should have been stricken for cause.

The harm resulting from such constitutional error should be analyzed under Rule 44.2(a). Under this standard, the judgment must be reversed unless the court determines beyond a reasonable doubt that the error did not contribute to the punishment. In this case, the court could not possibly show that the error was harmless beyond a reasonable doubt because the error prevented the defense from presenting any evidence at the punishment stage of the trial.

The majority states that the jury could not have held it against the defendant that he failed to present testimony giving a favorable punishment recommendation because the victim in this case was deceased. Thus, the jury could not have rationally expected the defendant to present such evidence. However, why then did the prosecutor respond that "in the interest of justice, he would not object to a victim recommending leniency for the defendant"? The venire very well could have understood the statements of the trial

53. *Mosley,* 983 S.W.2d at 264.

judge and the prosecutor to imply that a victim would testify regarding punishment if they desired leniency for the defendant. Thus, because the defense had no such testimony to offer, the jury may have presumed the failure to present such evidence as an indication that the victim did *not* want leniency for the defendant.

Even if we considered the right to a qualified jury to be only a substantial right, then the error of seating a jury which is not properly qualified on the issue of punishment still should not be disregarded under Rule 44.2(b).

For these reasons, I respectfully dissent.