NO. 07-05-0078-CR


 07-05-0079-CR

 07-05-0080-CR

 07-05-0081-CR

 07-05-0082-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 11, 2006


 ______________________________



JAVIER RODRIGUEZ CARBAJAL, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;



NO. 16,084-B, 16,085-B, 16,086-B, 16,102-B, 16,109-B;





 HONORABLE JOHN BOARD, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Following his pleas of not guilty to charges brought by five separate indictments,
consolidated for trial, appellant Javier Rodriguez Carbajal was convicted by a jury of all five
charges and assessed the indicated sentences, as follows:


 Unauthorized use of a motor vehicle - two years confinement and a
$2,000 fine;

 Unlawful possession of a firearm by a felon - seven years
confinement and a $7,000 fine;

 Aggravated kidnapping (enhanced) - ninety-nine years confinement
and a $10,000 fine;


 


 Possession of a controlled substance - two years confinement and a
$10,000 fine; and

 Burglary of a habitation (enhanced) - twenty years confinement and
a $10,000 fine.



By a single issue, appellant contends the trial court denied him his right to effective
assistance of counsel during voir dire examination. We affirm.

 At the conclusion of voir dire, before counsel made their strikes, counsel for
appellant requested to be provided with a copy of the criminal history information "pulled"
by the State on each potential juror prior to voir dire. Counsel asserted that the information
was not protected work product and would inform him of any convictions, including those
which tend to disqualify jurors. (1) In response, the court stated that it would expect the State
to notify the court and disclose any information that would disqualify a member of the panel
from serving as a juror. The State objected to appellant's request for the histories, claiming
that there was no authority requiring it to disclose such information to the defense. 
Counsel for appellant conceded he had no authority to support his position but stated he
had been provided such information in the past. The trial court ruled as follows:

 I'll deny that motion to the extent it calls for matters that would not show a
disqualification and would grant it as to matters that would show a
disqualification.


The jury subsequently convicted appellant on all counts.

 By his sole issue, appellant contends the trial court's refusal to compel the State to
disclose the results of the venire panel's criminal history check denied him the right to
effective assistance of counsel. Specifically, he argues that the ruling effectively limited
the scope of voir dire and prevented him from intelligently exercising his peremptory
challenges. 

 We initially note that counsel's request for the criminal histories at trial was
accompanied by his contention that "it is an unfair prejudice if we are not allowed to have
that information." Again, the contention on appeal is that the information would have
helped appellant to intelligently exercise his peremptory challenges, and that the trial
court's failure to order disclosure of the histories effectively limited the scope of his voir
dire. The contention on appeal does not correspond with that made at trial. That alone
would warrant our overruling appellant's issue. See Broxton v. State, 909 S.W.2d 912, 918
(Tex.Crim.App. 1995) (objection stating one legal theory may not be used to support
another legal theory on appeal).

 Addressing the merits of appellant's issue, he correctly asserts that a criminal
defendant's right to counsel protected by Article 1, Section 10 of the Texas Constitution
encompasses the right to ask proper questions on voir dire to permit the intelligent exercise
of peremptory and for cause challenges. See Taylor v. State, 109 S.W.3d 443, 452
(Tex.Crim.App. 2003) (stating rule).

 Review of a trial court's decisions during voir dire is for abuse of discretion. Howard
v. State, 941 S.W.2d 102, 108 (Tex.Crim.App. 1996). If abuse of discretion infringing the
right to question the venire is shown, we will evaluate harm to appellant under the standard
applicable to nonconstitutional error under Rule of Appellate Procedure 44.2(b). Taylor,
109 S.W.3d at 450-55. An abuse of discretion infringing the right to question the venire
in order to intelligently exercise peremptory challenges ordinarily is shown only when a
proper question about a proper area of inquiry is prohibited. Barajas v. State, 93 S.W.3d
36, 38 (Tex.Crim.App. 2002); Howard, 941 S.W.2d at 108.

 As noted, appellant's request and the court's ruling occurred at the conclusion of
voir dire. Although the trial court partially denied appellant's request, it never prohibited
appellant from questioning the venire panel regarding their criminal histories or otherwise
inhibited him from obtaining information he needed to exercise his challenges. See Taylor,
109 S.W.3d at 454. Given this fact, we are unable to see how the trial court's ruling
prevented the intelligent exercise of appellant's peremptory challenges. Appellant's issue
is overruled.


 Accordingly, the trial court's judgment is affirmed.


 James T. Campbell

 Justice






Do not publish. 
1. See Tex. Code Crim. Proc. Ann. arts. 35.16, 35.19 (Vernon 1989 and Supp. 2006)
(providing grounds for disqualification). 



biological mother
may contest the presumption of biological fatherhood provided in Chapter 151 by expressly
denying paternity of the child in her pleadings. Section 160.101(a), (b). When the mother
denies the parentage of a man presumed to be the father under Chapter 151, she has the
burden of rebutting the presumption of paternity by clear and convincing evidence. Section
160.110(a). 

 The parent-child relationship between a man and a child may be established in 
ways other than establishing that the man is the biological father of the child. For example,
the relationship may be established by proving the man has adopted the child, see Section
151.001(a)(3); or by proof that the man consented to his wife's conception by assisted
means. See Sections 151.101, 151.102, 151.103. Although consent by the man to an
assisted conception is required to be in writing, it has been held that under narrow
circumstances the parent-child relationship between a man and child may be established
by the man's ratification of the assisted conception. See K.B. v. N.B., 811 S.W.2d 634,
636-39 (Tex.App.--San Antonio 1991, writ denied). 

 Ratification is the adoption or confirmation by a person, with knowledge of all
material facts, of a prior act which did not then legally bind that person and which that
person had the right to repudiate. See Kunkel v. Kunkel, 515 S.W.2d 941, 948
(Tex.Civ.App.--Amarillo 1974, writ ref'd n.r.e.). Ratification is a plea in avoidance and thus
an affirmative defense which, absent trial by consent, is waived unless affirmatively
pleaded. See Land Title Co. of Dallas v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex.
1980). Pleading the actual legal term, however, is not required, so long as notice is given. 
See Earth Sciences, Co. v. Lindley Int'l, Inc., 650 S.W.2d 217, 218 (Tex.App.--San Antonio
1983, no writ) (ratification adequately pleaded where plaintiff alleged necessary elements
despite not specifically using legal term of ratification). The critical factor in determining
whether a principal has ratified an unauthorized act is the principal's knowledge of the
transaction and the principal's actions once the principal acquired knowledge of the
unauthorized act. See F.M. Stigler, Inc., 609 S.W.2d at 756-57. 

C. Analysis

 In the matter before us, Mona pled that the children were born during the marriage. 
She expressly stated in her pleadings that Randall was not the father of the twin boys and
that parentage testing excluded him as the father. Randall's counter-petition pled that
Randall and Mona were "the parents of the following [children] of this marriage . . . " and
identified the twins. Neither party pled that the children were the product of artificial
insemination or other assisted conception, nor that Randall consented to or ratified an
assisted conception. (3) 

 At the final hearing of August 31, 2000, Mona was the first witness to testify. She
testified that Randall was not the father of the children. She testified to Randall's lack of
support during the "invetro-fertilization" [sic] and pregnancy of the children. She testified
that "When we talked, if [Randall] had of chosen to use his own sperm they were going to
be his kids. But up until now-," at which time Randall's counsel objected because the
answer was nonresponsive. The trial court sustained the objection. The court then sua
sponte instructed Mona and her counsel that the court was not going to listen to testimony
that she thought the children were not Randall's. Despite Mona's further statement that
"he had told me that it wasn't going to be his," the trial court stated that Randall had a legal
right to make a claim, had now made it, and "that's passed." 

 Following presentation of the evidence, Mona's trial counsel was allowed to make
a bill of exceptions. No testimony was presented, but counsel stated to the trial court that
Mona desired to present evidence that (1) would have rebutted the presumption of
paternity set out by Section 151.002; (2) the children were conceived via in vitro fertilization 
and not artificial insemination; and (3) the facts and circumstances surrounding the
conception were different from the circumstances supporting findings of ratification in
cases under consideration by the trial court, such as in K.B. v. N.B. 

 The trial court then made rulings from the bench to the effect that Randall was the
father of the children and the divorce was granted. He set visitation and divided the
property of the marriage. The court also ruled from the bench that (1) Randall did not
"consent" as that term was used in Section 151.101, but he attempted to access the
children by filing an answer and cross-action for divorce and that action acted as
ratification; (2) some evidence was presented that Randall ratified the assisted conception;
and (3) the judge did not hear any evidence, and was not going to listen to any evidence
about whether or not an attempt was made to get Randall to consent to the assisted
conception. 

 Mona contested the presumption of biological fatherhood provided in Chapter 151
by expressly denying Randall's paternity of the children in her pleadings. See Section
160.101(a), (b). Once Mona denied the parentage of Randall, she had the burden of
rebutting the presumption of paternity by clear and convincing evidence. See Section
160.110(a). Her testimony broached the subject of assisted conception and alluded to the
fact that Randall at some point decided that children of an assisted conception from sperm
other than his sperm would not be his children. Evidence of whether the children resulted
from assisted conception, the timing of Randall's knowledge of such assisted conception
and Randall's actions once he acquired knowledge of all material facts as to such
conception would be relevant to the issue of whether he ratified such a conception. See
F.M. Stigler, Inc., 609 S.W.2d at 756-57; K.B. v. N.B., 811 S.W.2d at 636-39. 

 At the time the trial court effectively instructed Mona not to present evidence to
contest Randall's parentage of the children, Randall had pled only that the children were
born of the marriage. He had not pled that he consented to assisted conception, that he
ratified assisted conception or the elements of ratification. See F.M. Stigler, Inc., 609
S.W.2d at 757; Lindley Int'l, Inc., 650 S.W.2d at 218-19. Even if he had pled consent or
ratification, pleadings are not evidence unless offered and admitted as such. See Myers
v. Continental Panhandle Lines, 278 S.W.2d 365, 368 (Tex.Civ.App.--Amarillo 1954, no
writ). Moreover, generally, pleadings are not admissible as proof of their contents in favor
of the pleader, but are used to prove material admissions against the interests of the
pleader. Id. Assuming, arguendo, that a husband may use the doctrine of ratification
offensively to support establishing of a parent-child relationship with children born of
assisted conception, a husband's mere pleading that the parties are parents of children of
the marriage and seeking conservatorship of the children does not conclusively establish
the husband's ratification of the assisted conception. See K.B. v. N.B., 811 S.W.2d at 636-39; Myers, 278 S.W.2d at 368. Nor does such pleading conclusively establish such
consent to assisted conception as is required by the Family Code.

 Assuming, further, that the questions of Randall's consent to or ratification of
assisted conception were properly before the trial court, Mona's pleading and testimony
created fact questions on the issues. She was entitled to present relevant evidence on the
matter. See Tex. R. Evid. 401, 402. The trial court abused its discretion in excluding
evidence relevant to the issues. See Tex. R. Evid. 401, 402; Landon, 724 S.W.2d at
939-40. 

 Given the context of and the language used by the trial court in its instructions which
effectively directed Mona's counsel not to present evidence as to Randall's actions and
conduct in connection with the assisted conception, Mona was justified in making her
proposed proof known to the trial court in such a cursory manner as she did. See Tex. R.
Evid. 103(a)(2). The offer of proof is such that we cannot determine whether exclusion of
Mona's evidence probably resulted in rendition of an improper judgment. We conclude,
however, that the trial court's rulings probably prevented Mona from fully presenting her
proposed evidence and therefore probably prevented her from properly presenting her
case on appeal. See Tex. R. App. P. 44.1. 

CONCLUSION

 Mona's third issue is sustained. Because our determination as to the third issue is
dispositive of the appeal, we do not address her other issues. Tex. R. App. P. 47.1. The
judgment of the trial court is reversed and the cause is remanded for further proceedings. 
 

 Phil Johnson

 Justice




Publish.

 
1. Tex. Fam. Code Ann. § 151.101 (Vernon 1996). Further references to particular
sections or provisions of the Family Code will be by reference to the "Family Code," or
"Section_."
2. Mona apparently resided in New Mexico at the time the parties were married. 
Neither party references or cites the law of New Mexico in their briefs. We presume that
any applicable New Mexico law is the same as Texas law. See Holden v. Capri Lighting,
Inc., 960 S.W.2d 831, 834 (Tex.App.--Amarillo 1997, no pet.).
3. The parties agree on certain facts which are not entirely supported by evidence in
the record of the hearing on the merits, such as the fact that the children were conceived
via assisted conception methods.