# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00082-CR

**Roger Reyes, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR-08-830, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Roger Reyes of the offenses of continuous sexual abuse of a child and sexual performance by a child. *See* Tex. Penal Code Ann. §§ 21.02, 43.25 (West Supp. 2010). Punishment was assessed at life imprisonment without the possibility of parole for the continuous-sexual-abuse offense and fifty years' imprisonment for the sexual-performance-by-a-child offense, with the sentences to run concurrently. In four points of error, Reyes asserts that the district court abused its discretion in admitting evidence of an extraneous offense, erred in failing to give a contemporaneous limiting instruction to the jury regarding that offense, and erred in allowing the victim of the extraneous offense to give her opinion as to the punishment that she believed Reyes should receive. We will affirm the judgment.

**BACKGROUND**

Reyes was charged with sexually abusing his stepdaughter, E.R., on numerous occasions beginning when she was ten or eleven years old and continuing until she reported the abuse when she was thirteen years old. E.R. testified at trial and described the abuse in detail. One of the incidents E.R. described involved Reyes tying her wrists with rope, stuffing a sock in her mouth, and penetrating her while she was bound and lying on the floor. E.R. also testified, over objection by defense counsel, regarding a similar incident in 1996 involving another victim that Reyes had allegedly described to her. The testimony at issue consisted of the following:

[Prosecutor]: Did Roger ever talk to you about having tied up anyone else with ropes when he was—

[Defense]: Object, Your Honor. Calls for hearsay.

[Prosecutor]: Calls for hearsay?

[The Court]: That would be a statement against interest, I believe. Overruled.

[Prosecutor]: So who else did he tie up with ropes that he told you—

[Defense]: Your Honor, I'm going to object under 404(b), those things we talked about earlier.[1]

[The Court]: We did talk about it earlier, and I believe it is now admissible. And you can request a limiting instruction in the charge or at this time, whichever you like, or both.

[Defense]: We'd ask for a limiting instruction.

---

[1] Counsel was referring to a Rule 104 hearing held outside the presence of the jury prior to E.R.'s testimony in which the parties discussed the extraneous offense evidence and the district court withheld its ruling on the admissibility of the evidence until such time as the testimony pertaining to the offense was elicited. *See* Tex. R. Evid. 104.

[The Court]:   Well, I'm going to have to hear the evidence first, but—

[Defense]:   Okay.

[The Court]:   —I'll certainly be receptive to one.[2]

[Defense]:   Did Roger ever tell you about tying up anyone else?

[E.R.]:   No.

[Prosecutor]:   [E.R.], did he tell you that—about using—tying up a girl?

[E.R.]:   Yes.

[Prosecutor]:   Okay. What, if anything, do you remember him telling you about having tied up another girl?

[E.R.]:   He tried tying up a girl, and he was cocaine'd up [sic], and then he told me that—that he was raping her, and then—and then she had said that she was pregnant, and then—[3]

[Prosecutor]:   He was raping her—she was pregnant because she—he raped her? I don't understand.

[E.R.]:   She—he was raping her when she was tied up.

. . . .

[Prosecutor]:   Where was he living when that happened; did he tell you?

[E.R.]:   No.

[Prosecutor]:   Okay. But he did tell you that he had done that before to another girl?

[E.R.]:   Yes.

---

[2] A limiting instruction was provided in the jury charge.

[3] We note that Reyes did not make an objection to E.R.'s testimony regarding what "she" (presumably the victim of the extraneous offense) had said about becoming pregnant, and it is not an issue on appeal.

Additional evidence concerning the above incident was subsequently admitted, including the testimony of the officer who had investigated the incident and the written statement of the victim, T.A., who was sixteen years old at the time of the incident. According to T.A.'s statement, Reyes had grabbed her while she was walking past his apartment, dragged her into the apartment, tied her up with stereo wire, and stuffed a sock in her mouth. Before Reyes could do anything else to her, however, T.A. managed to untie herself and escape.

Other evidence considered by the jury included the testimony of Lisa Reyes, E.R.'s mother and Reyes's wife; the police officers who had investigated the case; Noella Hill, the Sexual Assault Nurse Examiner who had examined and interviewed E.R.; Angela Tanzillo-Swarts, an analyst with the Department of Public Safety who had analyzed DNA that had been recovered from a towel and a vibrator that had allegedly been used during some of the incidents and who testified that E.R. and Reyes could not be excluded as contributors to the DNA profiles that had been found on the items; and Brandon Winkenwelder, a computer forensics specialist with the San Marcos Police Department who testified that pornographic images and videos that depicted adult and underage females engaging in sexual acts had been recovered from Reyes's computer.

Reyes testified in his defense and denied all of the allegations against him. On cross-examination, Reyes admitted that he had pleaded guilty to the offense in 1996 involving T.A. and that, as part of a plea bargain with the State, he had received a sentence of eight years' imprisonment for that offense. Reyes further testified that he had been released on parole in 2000 after having served approximately three years in prison.

The jury found Reyes guilty as charged, and the case proceeded to punishment. One of the witnesses during punishment was T.A., now an adult, who described the circumstances

surrounding the incident with Reyes in 1996 and claimed that she had continued to be traumatized by the experience. During T.A.'s testimony, the State asked her, over objection by defense counsel, "What do you think needs to happen to [Reyes] with regard to punishment? Do you have any opinion about where he needs to go?" T.A. answered, "I don't think he should ever get out. I think he should be put away so that he doesn't do this to anybody anymore. He doesn't hurt anybody like he's hurt me."

The jury returned its verdict on punishment as noted above and the district court sentenced Reyes accordingly. This appeal followed.

## ANALYSIS

### Admissibility of extraneous offense evidence

In his first point of error, Reyes asserts that E.R.'s testimony regarding what Reyes had told her concerning the 1996 offense constitutes inadmissible hearsay. In his second point of error, Reyes also claims that the admission of evidence pertaining to the 1996 offense violates rule of evidence 404(b).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). A trial court abuses its discretion when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable

5

to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

When Reyes objected to E.R.'s testimony on the basis of hearsay, the district court overruled the objection, characterizing the testimony as a "statement against interest." *See* Tex. R. Evid. 803(24). To fall under this exception to the hearsay rule, two requirements must be satisfied. First, the trial court must determine whether the statement, considering all the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made that statement. *Walter v. State*, 267 S.W.3d 883, 890-91 (Tex. Crim. App. 2008). Second, the trial court must determine whether there are sufficient corroborating circumstances that clearly indicate the trustworthiness of the statement. *Id*. at 891. Reyes argues that the first requirement cannot be satisfied because at the time Reyes made the statement to E.R., he had already been convicted of and served his sentence for the 1996 offense.

However, Reyes overlooks another theory under which the district court could have admitted the evidence—as an admission by a party opponent. *See* Tex. R. Evid. 801(e)(2)(A). This rule "plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay." *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). Such statements "are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Id*. Moreover, "party admissions, unlike statements against interest, need not be against the interests of the party when made; in order to be admissible, the admission need only be offered as evidence against the party." *Id*. Thus, regardless of whether E.R.'s testimony qualifies as a statement against interest, the district court would not have abused its discretion in admitting the evidence as an admission by a

6

party opponent. *See id.*; *Ballard v. State*, 110 S.W.3d 538, 542 (Tex. App.—Eastland 2003, pet. dism'd); *see also Bingham v. State*, 987 S.W.2d 54, 56-57 (Tex. Crim. App. 1999) ("While statements against interest are admissible due to their reliability, admissions by party-opponents are admissible precisely because they are being admitted against the party alleged to have made those statements. Thus, that party cannot complain of an inability to cross-examine him/herself, and since s/he is their author, s/he is estopped from complaining of their untrustworthiness.").

We similarly cannot conclude that the district court abused its discretion in overruling Reyes's Rule 404(b) objection. Rule 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(b). However, the general prohibition against the admission of extraneous offenses is subject to numerous exceptions, one of which is to show proof of the defendant's "plan." *See id.* This exception "allows admission of evidence to show steps taken by the defendant in preparation for the charged offense." *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005). Reyes limits his argument to this particular exception. He contends that the evidence was not admissible to show a "common scheme or plan" because "the evidence showed that the two incidents were totally unrelated and separated by a number of years." *See id.* at 452-53 (explaining that "[r]epetition of the same act or same crime does not equal a 'plan'" and that even when "two offenses share numerous characteristics, '[a] series of similar acts are not enough to show a common plan or design'").

However, even assuming that Reyes is correct, there are other exceptions under which the district court could have admitted the evidence. For example, rebuttal of a defensive theory is one of the permissible and perhaps most common purposes for which extraneous-offense evidence

7

may be admitted.  *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Albrecht v. State*, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972).  In this case, the defensive theory throughout trial was that E.R.'s outcry had been fabricated by E.R. in an attempt to punish Reyes for disciplining her and to separate Reyes from E.R.'s mother.  The defense began developing this theory in its opening statement, when counsel argued that E.R. "gets attention by telling stories" and that, as the investigation progressed, her "story just continues to grow and to grow and to grow."  E.R.'s outcry included an allegation that on one occasion, Reyes had assaulted her after tying her wrists with rope. Thus, evidence that Reyes had similarly tied up another girl would have a tendency to rebut the defensive theory that E.R.'s outcry was fabricated, and the district court would not have abused its discretion in admitting the evidence on that basis.  *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (explaining that "a defense opening statement, like that made in this case, opens the door to the admission of extraneous-offense evidence, like that admitted in this case, to rebut the defensive theory presented in the defense opening statement," and holding that trial court does not abuse its discretion in admitting such evidence when "it is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that the complainant fabricated her allegations against him").

We overrule Reyes's first and second points of error.

**Limiting instruction**

In his third point of error, Reyes claims that the district court erred by not providing an oral instruction limiting the purpose for which the jury could consider the above extraneous-

offense evidence. *See* Tex. R. Evid. 105(a) (providing that when evidence admissible for one purpose but inadmissible for another purpose is admitted, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly"); *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (holding that limiting instruction should be given in jury charge and also at time evidence is admitted). The State responds that Reyes failed to preserve error on this point.

We agree with the State. "To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *see* Tex. R. App. P. 33.1(a). In this case, when Reyes requested a limiting instruction, the district court replied, "Well, I'm going to have to hear the evidence first, but I'll certainly be receptive to one." The State then proceeded to elicit testimony from E.R. regarding the extraneous-offense evidence. Reyes did not renew his request for a limiting instruction at that time, nor did he later request a limiting instruction when additional evidence concerning the extraneous offense was subsequently admitted. We cannot conclude that the district court's comment that it would "certainly be receptive" to a limiting instruction constitutes an adverse ruling to Reyes's request. *See Wilson v. State*, 7 S.W.3d 136, 144 (Tex. Crim. App. 1999) (defendant requested limiting instruction prior to admission of evidence; trial court's reply of "okay" constituted either no ruling or favorable ruling).

Nor can we conclude that Reyes's request for a limiting instruction was sufficiently specific as to put the district court on notice that Reyes wanted a limiting instruction at the time the evidence was admitted. *See id*. (finding that defendant further failed to preserve error because he "did not express a clear desire for an instruction to be given contemporaneously with the admission of the evidence"). When the district court overruled Reyes's objection to the evidence, it informed

9

him that he could "request a limiting instruction in the charge or at this time, whichever you like, or both." Reyes responded, "We'd ask for a limiting instruction," without specifying when he wanted the limiting instruction to be given. We observe that the district court did provide a limiting instruction in the jury charge, "which is one appropriate time for the instruction." *Id.* Without a specific request for a contemporaneous limiting instruction at the time the evidence was admitted, and without the district court's denial of such a request, there is nothing for us to review.

We overrule Reyes's third point of error.

**Punishment**

In his fourth point of error, Reyes argues that the district court erred by allowing the victim of the extraneous offense to testify to her opinion that she did not think Reyes "should ever get out" of prison and that "he should be put away so that he doesn't do this to anybody anymore." The State asserts in response that there was no error in the admission of this evidence or, in the alternative, that any error was harmless.

It is has long been the rule in Texas that an expert witness may not recommend a particular punishment to the jury. *See Sattiewhite v. State*, 786 S.W.2d 271, 290-91 (Tex. Crim. App. 1989); *Fuller v. State*, 819 S.W.2d 254, 258 (Tex. App.—Austin 1991, pet. ref'd). Several intermediate courts of appeals have extended this rule to the opinions of non-experts regarding punishment, including victims. *See, e.g.*, *Johnson v. State*, 987 S.W.2d 79, 87 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *Wright v. State*, 962 S.W.2d 661, 663 (Tex. App.—Fort Worth 1998, no pet.); *Mayo v. State*, 861 S.W.2d 953, 955 n.2 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *Hughes v. State*, 787 S.W.2d 193, 196 (Tex. App.—Corpus Christi 1990, pet. ref'd); *Gross v. State*,

10

730 S.W.2d 104, 105-06 (Tex. App.—Texarkana 1987, no pet.). The rationale for excluding such testimony is that it does not assist but instead tends to confuse the jury. *See Sattiewhite*, 786 S.W.2d at 291. As one appeals court has explained, "the witnesses are in no better position to form an opinion [as to punishment] than the jury itself, and the allowance of such opinions in evidence would constitute merely an appeal to sympathy or prejudice, and would tend to suggest that the jurors may shift their responsibility to the witnesses." *Gross*, 730 S.W.2d at 105.[4]

Assuming without deciding that the witness's punishment recommendation should not have been admitted, we cannot conclude on this record that Reyes was harmed by its admission. A trial court's error in admitting evidence should be disregarded unless the error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

This was a case in which the defendant was convicted of sexually abusing his pre-adolescent stepdaughter on a continuous basis over a period of years. Most of the evidence admitted at trial concerned that abuse. E.R.'s testimony concerning what Reyes did to her was detailed and

---

[4] However, more recent decisions by the court of criminal appeals suggest that such opinion testimony from victims may be admissible. *See Taylor v. State*, 109 S.W.3d 443, 454 (Tex. Crim. App. 2003) ("A punishment recommendation from a non-victim—especially an expert—entails a situation significantly different from a recommendation from the victim, who, at least arguably, was in a position to give an opinion based rationally upon his observations of the crime itself and who is the one who suffered from the crime in the first place."); *Fryer v. State*, 68 S.W.3d 628, 630-31 (Tex. Crim. App. 2002) (permitting trial court to consider victim's punishment recommendation contained in PSI).

supported by considerable other evidence in the record, including DNA analysis. While we do not minimize the seriousness of the extraneous offense involving the now-adult T.A. and the traumatic effect it had on her, Reyes did not sexually assault T.A. On the other hand, Reyes sexually assaulted E.R., who was still a minor at the time of trial, on numerous occasions. In such a context, T.A.'s punishment recommendation likely had only a slight effect, if any, on the jury's punishment decision. Moreover, the record reveals that T.A.'s testimony concerning punishment was brief. The State, during its closing argument, did not emphasize the challenged testimony. On this record, we have fair assurance that T.A.'s punishment recommendation did not influence the jury or had but a slight effect.

We overrule Reyes's fourth point of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   June 24, 2011

Do Not Publish

12