# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00535-CR

**Joshua Brown, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 3030529, HONORABLE JON N. WISSER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

After a jury trial, Joshua Brown was convicted for the murder of Robert Berry. *See* Tex. Pen. Code Ann. § 19.02(b)(2) (West 2003). The court imposed a sentence of sixteen years' confinement. In one issue on appeal, Brown contends that the trial court erred in allowing victim impact testimony during the guilt-innocence phase of the trial. We affirm the conviction.

### Background

In his brief, Brown states that the critical decision the jury had to make in this case was not whether he participated in the assault that led to Berry's death but his state of mind. There is no challenge to the legal or factual sufficiency of the evidence. Accordingly, we detail the facts as briefly as possible.

On the night of the murder, Robert Berry was staying with James Davis. Berry had been outside the house and apparently encountered four individuals. Berry attempted to flee inside; Joshua Brown and his brother, Rene Hernandez, followed him inside. The altercation apparently arose out of a purported debt that Barry owed to the mother of Brown and Hernandez. The two began stomping, hitting, and kicking Berry. Brown held Berry's arms behind his back so that Berry was on his stomach while Hernandez stomped on him for 30 to 40 seconds. After Hernandez was through, Brown emptied Berry's pockets, taking money and a cell phone, then jumped on Berry once or twice. Brown and Hernandez told Davis not to say anything and left the house.

After an investigation, Brown and Hernandez were eventually apprehended and this trial followed. At the close of evidence, the State called Erestein Clark, Berry's mother. She testified that Berry had three brothers and was raised by herself and his stepfather. Berry attended elementary and high school in Austin and played several sports growing up. She testified that Berry had a good relationship with his family, had worked at McDonald's and had two children and three stepchildren. Clark also identified a photograph of her son taken before the murder. This photograph was published to the jury over an objection by defense counsel.

In one issue on appeal, Brown contends that Clark's testimony at guilt-innocence was improper victim impact testimony.

**Discussion**

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). The test

2

for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd). An appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

### *The Photograph*

Brown objected to the admission of a photograph of Berry introduced as part of Clark's testimony. The photograph that Clark identified showed Berry as a young man dressed in shirt and tie, standing alone, outdoors, and in front of two vehicles.

The admission of photographs of the victim taken before the murder has been upheld as probative of the identity of the victim. *See Matchett v. State*, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996) (neither testimony nor identification of photograph constituted victim impact testimony); *Fails v. State*, 999 S.W.2d 144, 145-47 (Tex. App.—Dallas 1999, pet. ref'd) (photograph had some probative value in establishing identity of murder victim even though another photograph had already been admitted; probative value of photograph not substantially outweighed by danger of unfair prejudice).

In this case, the photograph was not a gruesome autopsy or crime scene photograph. The photograph did not have any powerful emotional content; it did not, for example, show Berry with his children. Clark's identification had probative value in identifying Berry as the victim. Any danger of prejudice would appear to be slight. The court did not abuse its discretion in admitting the photograph. *See Fails*, 999 S.W.2d at 147.

3

*The Testimony*

Brown complains that Clark's testimony about Berry was improper victim impact testimony that should have been admitted only at the punishment phase.[1] Brown is correct that a victim impact statement may not be considered until after a finding of guilt. *See* Tex. Code Crim. Proc. Ann. art 56.03(f). However, a witness's testimony is not a victim impact statement when no evidence is given regarding the physical or psychological effect of the crime on the victims themselves, their families, or the economic effect, if any, the criminal episode has had on their lives. *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991), *overruled in part on other grounds, Taylor v. State*, 109 S.W.3d 443, 450 (Tex. Crim. App. 2003) (*Lane* overruled to degree it suggests that harm "automatic"; all errors subject to harm analysis except structural).

At trial, Clark testified that Berry was her son and that he had three brothers, a stepfather, two children, and three stepchildren. She testified that he grew up in Austin, that he liked to play football and basketball, that he had a good relationship with his brothers, and that he worked at McDonald's when he finished high school. That, and the identification of the photograph, was the extent of the testimony. She did not testify about any after-effects of the murder on any of Berry's family members, either psychological or financial.

The evidence introduced concerning Berry would appear to fit the category of contextual background evidence: "Considerable leeway is allowed even on direct examination for proof of facts that do not bear directly on the purely legal issues, but merely fill in the background of the narrative and give it interest, color, and lifelikeness." *Mayes v. State*, 816 S.W.2d 79, 87 (Tex.

---

[1] The State contends that Brown did not preserve error because he did not object until seventeen of twenty questions concerning Berry had been asked. The State is correct that Brown's objections were untimely. However, we have considered the issue on the merits in the interest of justice.

4

Crim. App. 1991); *Schultze v. State*, 177 S.W.3d 26, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). For example, in *Matchett* the court held admissible the victim's wife's testimony describing her husband's family background, and stating that she had been married to the victim for twenty-five years, that they had five children, and that the victim was home alone on the night of his murder. *Matchett*, 941 S.W.2d at 931. Clark's testimony is comparable to that in *Matchett*. Her testimony simply placed the deceased in context as a real human being, allowing the jury to appreciate the "lifelike" quality of the factual narrative rather than being forced to view the crime only as a cold and abstract concept. *See Mayes*, 816 S.W.2d at 87.

Clark's testimony was permissible background evidence, not victim impact testimony. Accordingly, the trial court did not abuse its discretion in admitting this testimony at the guilt-innocence phase.

## Conclusion

We have held that the trial court did not abuse its discretion in the admission of the complained of photograph and testimony. We overrule Brown's single point of error and affirm the conviction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton
Affirmed
Filed: August 25, 2006
Do Not Publish

5