

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00805-CR

**EX PARTE** Santos **GUEVARA**

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 4704-A
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice
               Jason Pulliam, Justice

Delivered and Filed:  March 4, 2015

AFFIRMED

Appellant Santos Guevara filed an application for writ of habeas corpus in the trial court

pursuant to article 11.072 of the Texas Code of Criminal Procedure, claiming he received

ineffective assistance of counsel relative to the State's motion to adjudicate.  After a hearing, the

trial court denied Guevara's application.  On appeal, Guevara contends the trial court erred in

denying his application.  We affirm the trial court's order denying Guevara's application.

### BACKGROUND[1]

In 2008, Guevara pled no contest to the offense of felony theft.  The trial court deferred a

finding of guilt and placed Guevara on probation for a period of two years.  Subsequently, the

---

[1] Guevara has several appeals pending in this court, and they are all somewhat related in that they involve Guevara and the same essential facts.  It appears some of the documents relevant to, and filed in, the underlying cause of this appeal were placed in the clerk's record for appeal number 04-13-00883-CR.  The State has requested that we take

State filed a motion to adjudicate, claiming Guevara violated certain conditions of his probation. Specifically, the State alleged Guevara: (1) committed the offense of assault, violating the condition that he commit no offense against the laws of Texas; (2) possessed and consumed alcohol and assaulted an individual, violating the condition that he avoid injurious or vicious habits; and (3) was on the premises of Red Baron's Bar, violating the condition that he avoid persons or places of disreputable or harmful character.

The first allegation — the assault violating Texas law — was struck by the State at the hearing. The hearing then proceeded on the other two allegations. Ultimately, Guevara pled true to allegations two and three based on a plea agreement with the State. The trial court adjudicated Guevara guilty of the previous theft charge and sentenced him to confinement for two years in a state jail facility. However, the trial court probated the sentence for a period of five years. Guevara did not file an appeal.

In 2013, more than four years after the adjudication and imposition of probation, Guevara filed an application for writ of habeas corpus under article 11.072 of the Texas Code of Criminal Procedure. In the application, Guevara claimed he received ineffective assistance of counsel with regard to the State's motion to adjudicate. The trial court denied the application, and Guevara perfected this appeal.

## ANALYSIS

In his brief, Guevara lists four issues under "Issues Presented," asserting the trial court erred in: (1) denying his application because the evidence established he was inadequately

---

judicial notice of the contents of the clerk's record in appeal number 04-13-00883-CR, which is on file in this court. An appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties. *Reynolds v. State*, 548 S.W.2d 733, 734 n.1 (Tex. Crim. App. 1977); *Huffman v. State*, 479 S.W.2d 62, 68 (Tex. Crim. App. 1972), *overruled on other grounds by Ex parte Castellano*, 863 S.W.2d 476 (Tex. Crim. App. 1993); *Ex parte Sotelo*, 878 S.W.2d 179, 191 (Tex. App.—Fort Worth 1993, pet. ref'd). Accordingly, we accede to the State's request and take judicial notice of the documents in the clerk's record in appeal number 04-13-00883-CR.

informed of the status of his case, and a significant portion of the evidence upon which his revocation was based should have been removed from the record before the revocation hearing; (2) finding the parking lot of a certain bar was a place of disreputable or harmful character because there was no evidence to support the finding; (3) concluding he failed to establish ineffective assistance of counsel; and (4) finding he knowingly and voluntarily entered a plea of true to the motion to adjudicate. However, a review of the substantive argument within Guevara's brief establishes his only complaint on appeal is that he received ineffective assistance of counsel with regard to the motion to adjudicate. Specifically, he contends his counsel was ineffective in that she failed to: (1) properly investigate the State's allegations; (2) adequately communicate with Guevara; and (3) cause the State's motion to adjudicate to be properly "revised to fit the parameters of the 'deal.'" According to Guevara, these mistakes by counsel caused him to plead true to allegations that were not in fact true, and that but for counsel's ineffectiveness, he would have proceeded to a full hearing rather than pleading true.

### *Standard of Review*

An applicant seeking post-conviction habeas corpus relief must prove his claims by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). When we review a trial court's decision denying habeas relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). In our review, we afford almost total deference to the trial court's findings of fact that are supported by the record, especially when the fact findings are based on the credibility and demeanor of a witness. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We afford this same deference to the trial court's application of

the law to the facts if the application turns on issues of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. In both of these instances, we apply an abuse of discretion standard. *See Ex parte Garcia*, 353 S.W.3d 785, 787–88 (Tex. Crim. App. 2011) (adopting abuse of discretion standard articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) (en banc)); *see Ex parte Skelton*, 434 S.W.3d 709, 717 (Tex. App.—San Antonio 2014, pet. ref'd). However, if the resolution of the ultimate issues turns upon the application of the law absent any evaluation of credibility or demeanor, we use a de novo standard of review. *Peterson*, 117 S.W.3d at 819; *see Skelton*, 434 S.W.3d at 717.

### *Applicable Law — Ineffective Assistance of Counsel*

To determine whether to grant habeas corpus relief for ineffective assistance of counsel, i.e., whether trial counsel's representation was so inadequate as to violate a defendant's right to counsel under the Sixth Amendment, Texas courts apply the two-pronged *Strickland* test. *Martinez*, 330 S.W.3d at 900; *see Strickland v. Washington*, 466 U.S. 668, 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Under the two-pronged *Strickland* test, a defendant must prove by a preponderance of the evidence that trial counsel's performance was deficient and that this deficient performance prejudiced his defense. *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004); *Thompson*, 9 S.W.3d at 812; *Skelton*, 434 S.W.3d at 717. The allegations of ineffectiveness "must be firmly founded in the record." *Nailor*, 149 S.W.3d at 130 (quoting *Thompson*, 9 S.W.3d at 813). A claim that counsel was ineffective is analyzed under the "totality of the representation" standard. *Nailor*, 149 S.W.3d at 130; *Thompson*, 9 S.W.3d at 813. Moreover, our review of trial counsel's representation "is highly deferential" and we must presume "counsel's actions fell within the wide range of reasonable and professional assistance." *Nailor*, 149 S.W.3d at 130 (quoting *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). The

"ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Martinez*, 330 S.W.3d at 901 (quoting *Strickland*, 466 U.S. at 696).

To meet the first prong of the *Strickland* test, Guevara must establish by a preponderance of the evidence that his trial counsel's representation was "deficient," that is, the representation fell below an objective standard of reasonableness based on prevailing professional norms and the circumstances of the case. *See Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 900. We will not second-guess counsel's tactical decision unless those decisions were "so outrageous that no competent attorney would have engaged in it." *Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010).

To meet the second prong of the *Strickland* test, Guevara must show he was prejudiced by counsel's deficient performance. *See Strickland*, 466 U.S. at 687; *Martinez*, 330 S.W.3d at 900–01. In other words, he must show there is a reasonable probability that, but for his attorney's deficient representation, the result of the proceeding would have been different — in this case, that he would not have pled true to the allegations in the State's motion to adjudicate. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (en banc), *overruled in part on other grounds by Taylor v. State*, 109 S.W.3d 443 (Tex. Crim. App. 2003). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Thompson*, 9 S.W.3d at 812–13. We evaluate prejudice based on the overall context of the record. *See Ex parte Menchaca*, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993).

### *Application*

Our review of Guevara's brief shows he contends his counsel was ineffective because she failed to: (1) properly investigate the State's allegations in its motion to adjudicate; (2) adequately communicate with him; and (3) take steps to see that the State revised its motion to adjudicate to "fit the parameters of the deal." Guevara contends that if his attorney had provided effective

assistance, he would not have pled true to conditions two and three of the State's motion to adjudicate.

The allegations in the State's motion to adjudicate arose from an event that occurred when Guevara, after admittedly consuming four beers at his home, traveled to Red Baron's Bar to give a friend a ride home. The State alleged Guevara was in the parking lot of the bar, a violation of his probation in that he was supposed to avoid persons or places of disreputable or harmful character, when he committed an assault. It is undisputed that the State struck the assault allegation at the hearing. According to Guevara, he believed all references to Red Baron's Bar were to be struck from the motion to adjudicate as part of his deal with the State, which would mean only the consumption of alcohol allegation would have remained if his attorney had acted effectively and insured that the motion conformed to the deal. However, because the allegation remained, he felt compelled to plead "true" to both allegations to avoid incarceration. Guevara contends that if only the consumption of alcohol allegation had remained, he would not have pled "true," but would have taken his chances with the trial court after a full hearing, which would have permitted him to explain why he was in the parking lot of the bar. It seems Guevara contends his decision to plead "true" was due to his attorney's lack of investigation, lack of communication, and failure to have the third allegation struck from the State's motion.

*Lack of Investigation*

With regard to this claim, Guevara states in his brief: "The recitation by Defendant of the efforts made by counsel reflects that there was no investigation of anything." Guevara provides no additional argument or actual analysis, nor does he provide citation to the record for this assertion. In other words, Guevara provides no substantive argument or record support for his conclusion. "This omission is fatal because a brief must contain a clear and concise argument for the contentions made. TEX. R. APP. P. 38.1(i); *McGee v. State*, 342 S.W.3d 245, 247 (Tex. App.—

Amarillo 2011, pet. ref'd). If an appellant fails to provide an argument in support of a claim, the matter is inadequately brief and nothing is presented for appellate review. *McGee*, 342 S.W.3d at 247–48. As stated by the Texas Court of Criminal Appeals, we have no obligation "to construct and compose" a party's "issues, facts, and arguments with appropriate citations to authorities and to the record." *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). Accordingly, we hold nothing is presented for our review with regard to Guevara's claim that his counsel failed to adequately investigate the State's allegations. *See id.*; *see also Maldonado v. State*, No. 04-06-00755-CR, 2008 WL 506195, at *5 (Tex. App.—San Antonio Feb. 27, 2008, no pet.).

Moreover, we have reviewed the record from the writ hearing and find that even if preserved, Guevara did not establish by a preponderance of the evidence that his counsel failed to investigate the State's allegations. *See Nailor*, 149 S.W.3d at 130 (requiring applicant to establish ineffectiveness claim by preponderance of evidence). Numerous times, when queried about investigative actions by his counsel — e.g., did she contact witnesses, go to the bar parking lot — Guevara responded that to his knowledge counsel had not contacted witnesses, gone to the bar parking lot, or taking other investigative steps. He did not present affirmative evidence that his counsel failed to do these things; rather, he simply testified that to his knowledge she did not take any investigative actions. *Nailor*, 149 S.W.3d at 130; *Thompson*, 9 S.W.3d at 812; *Skelton*, 434 S.W.3d at 717. Thus, Guevara's allegations of ineffectiveness with regard to investigation are not "firmly founded in the record." *Nailor*, 149 S.W.3d at 130 (quoting *Thompson*, 9 S.W.3d at 813).

Moreover, counsel could have reasonably determined further investigation was unnecessary. *See Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). Guevara admitted at the writ hearing that he told his attorney "the facts and circumstances of the situation at Red Baron's Bar." Guevara also testified he told his attorney he drank alcohol as alleged in the State's motion, thus admitting the allegation was true. He also admitted to his attorney that he

went to Red Baron's Bar as the State alleged. Guevara even explained to his attorney why he went to the bar. Given Guevara's admissions regarding what he told his attorney about the State's allegations, we cannot say counsel lacked a "firm command of the facts." *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Given the admissions, the trial court could have concluded Guevara's counsel made a reasonable decision that no further investigation was necessary — Guevara admitted to consuming alcohol and being on the premises of the bar — both violations of his deferred adjudication probation, making further investigation unnecessary. *See Harrington*, 310 S.W.3d at 458. Rather, at that point, counsel's admitted concern was keeping Guevara from possible confinement. Accordingly, viewing the facts in the light most favorable to the trial court's ruling, we cannot say the trial court erred in refusing to find ineffective assistance of counsel based on Guevara's allegation of failure to investigate. *See Peterson*, 117 S.W.3d at 819.

*Inadequate Communication*

Guevara also contends his counsel for the motion to adjudicate failed to adequately communicate with him. With regard to this allegation, Guevara states in the "Statement of Facts" portion of the brief that, "The recitation of Defendant on his contact with counsel reflected sparse contact." He then refers the court to pages 26 through 32 of the reporter's record. In the argument portion of his brief, he states he pled true to inaccurate allegations "due to apparent confusion and lack of effective communication." He provides no record citations for this assertion.

In the portion of the record cited by Guevara, the testimony shows that after Guevara hired counsel for the adjudication matter, he met with her outside of the courtroom before docket call. As noted above, Guevara told the attorney "the facts and circumstances of the situation at Red Baron's Bar." Guevara admitted to the attorney he drank alcohol as alleged in the State's motion, thus admitting the allegation was true. He also admitted to his attorney that he went to Red Baron's

Bar as the State alleged, although he did not go inside. As to counsel communication with Guevara, he testified, "[S]he explained to me what we were going to — what she was going to represent me for and what she was going to do for me." Counsel advised that she was going to look at the court documents "and see what we could come up with" in an effort "to keep [Guevara] from going to jail." Guevara stated they talked for approximately twenty minutes, but counsel did not ask him any questions about the case. He did not meet with her again until the actual day of the hearing on the State's motion.

On the day of the hearing, Guevara stated that after they initially approached the judge, he and his attorney went to the back of the courtroom where counsel "explained everything to me." She advised Guevara that under the terms of the plea agreement with the State, he would be "taken off deferred adjudication . . . get a straight felony and . . . get another three years on top of the two years of probation you have, plus an extra hundred hours of community service," and take an anger management course and a course regarding theft by check. Guevara admitted the attorney "read everything to me. She asked me if I understood it, and I said, 'Yes, ma'am.'" This meeting also lasted approximately twenty minutes. However, according to Guevara's testimony at the writ hearing, he believed the adjudication was based on the alleged assault — despite the fact the State dropped the allegation in open court in front of Guevara and his admission that counsel explained and read everything to him and he admitted he understood. Moreover, the record reflects the relevant documents were read and shown to Guevara and the assault allegation was clearly stricken from the State's motion. At the writ hearing, Guevara continued to insist that he misunderstood, believing the State was proceeding on the assault allegation. He testified that if he had understood, he would have rejected the State's plea offer and taken his chances with the trial court, even if it meant going to prison.

When queried at the writ hearing as to whether the attorney at the hearing on the motion to adjudicate explained that Guevara might be eligible for release from deferred adjudication or the court could consider the motion to adjudicate and the surrounding circumstances, Guevara stated she had not. However, Guevara admitted he had only been on probation for two weeks of the two-year term when the alleged violations occurred. We fail to see, as suggested by Guevara's current counsel, how he could have been released from the recently imposed term of probation. According to Guevara, he understood he would have a felony conviction, but the attorney advised him about the possibility of an expunction at a later date. Guevara also admitted he knew — his attorney had advised him — that the State's original plea offer included six months confinement in prison. His attorney was able to negotiate a plea that did not involve incarceration.

Based on the record, the trial court could have concluded there was sufficient communication between Guevara and his counsel, i.e., Guevara did not prove by a preponderance of the evidence that his counsel's representation during the adjudication process fell below an objective standard of reasonableness based on prevailing professional norms and the circumstances of the case. *See Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 900. Based on the record, it appears that with regard to the entire matter — particularly given that the State's initial plea offer included prison time — Guevara's attorney performed responsibly, communicating to Guevara it was her intent to ensure he was not incarcerated. Guevara admitted he knew the State had initially requested incarceration and he advised his attorney he did not want to go to prison. At best, it appears Guevara may have misunderstood some of counsel's statements, but admittedly did not ask her to explain or otherwise question her. In fact, Guevara admitted his attorney "read everything to me . . . asked if I understood it, and I said, 'Yes, ma'am.'" He admitted at the writ hearing that he was questioned by the trial judge at the adjudication hearing. Before the trial court accepted his plea of true, the judge asked if he was pleading true to "going to the bar and drinking

four beers" because those allegations were true. Guevara admitted he was. Guevara also admitted at the writ hearing that he remembered he was pleading true to the State's second and third allegations, but was admittedly confused as to whether either of those allegations concerned the alleged assault. Guevara testified at the writ hearing that he was "confused." He also admitted he knew he was not supposed to consume alcohol and that any violation of his conditions of probation could result in a revocation and imposition of punishment up to the maximum.

Accordingly, viewing the facts in the light most favorable to the trial court's ruling, and considering that Guevara's credibility with regard to his understanding and communication with his attorney was within the trial court's purview, we cannot say the trial court erred in refusing to find Guevara's counsel performed deficiently with regard to communication with her client. *See Amezquita*, 223 S.W.3d at 367; *Peterson*, 117 S.W.3d at 819.

### *Revising the Motion to Adjudicate*

Guevara also contends his counsel was ineffective because she failed to require the State to "revise" the motion to adjudicate "to fit the parameters of the 'deal.'" With regard to this allegation, Guevara appears to contend he understood his plea agreement with the State to require the State to remove any allegation from the motion to adjudicate that dealt with "the incident at Red Baron's Bar." Thus, according to Guevara, although his attorney negotiated with the State so that the State agreed to remove the assault allegation — the first allegation in the motion — his attorney was deficient in failing to have the State remove the third allegation in the motion — that Guevara was on the premises Red Baron's Bar, violating the condition that he avoid persons or places of disreputable or harmful character.

As noted above, the record reflects the State alleged three violations of probation. The record suggests Guevara knew there were three allegations. It is undisputed that Guevara pled true to two violations, and in her affidavit, which was used as evidence at the writ hearing, his

adjudication attorney averred the State had agreed only to strike the assault allegation; the State intended to proceed on the consumption of alcohol and the "entering the premises of a bar."[2] Guevara admitted his attorney read everything to him and he told her he understood.

As noted above, before the trial court accepted Guevara's plea at the adjudication hearing, the judge asked if he was pleading true to "going to the bar and drinking four beers" because those allegations were true. Thus, Guevara knew he was pleading true to two violations — one of which involved going to the bar. Guevara admitted at the writ hearing that he remembered pleading true to the State's second and third allegations. Thus, there is evidence in the record from the writ hearing that despite his claim, Guevara knew there were three allegations and he pled true to two of them. The trial court could certainly surmise, given Guevara's admitted knowledge, that Guevara was well aware the plea deal involved only the removal of the assault allegation — not everything relating to Red Baron's Bar. Thus, much like his allegation regarding the lack of communication, we hold it was within the trial court's discretion to find the performance by Guevara's attorney with regard to the adjudication was not deficient in the manner suggested by Guevara. *See Amezquita*, 223 S.W.3d at 366–67; *Peterson*, 117 S.W.3d at 819.

*Prejudiced by Counsel's Performance*

Because we have determined the trial court was within its discretion in determining counsel's performance was not ineffective, we need not determine whether Guevara was prejudiced by her performance. *See Rodriguez v. State*, 446 S.W.3d 520, 540 (Tex. App.—San Antonio 2014, no pet.) (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). However, even if we were to assume that counsel was deficient in some way, we would hold

---

[2] Guevara makes much ado about the attorney's use of the word "entering," testifying he told the attorney he never entered the bar. Yet, it is clear the allegation in the motion, which was read to Guevara by his own admission, as well as by the trial court, was that he was on the "premises" of the bar. The State never alleged he entered the bar.

Guevara is not entitled to relief because he failed to establish the alleged deficient performance prejudiced him. In other words, Guevara did not establish by a preponderance of the evidence that he would not have pled true to at least one of the State's allegations in the motion to adjudicate. *See Morrow*, 952 S.W.2d at 536. We evaluate potential prejudice based on the context of the entire record. *See Menchaca*, 854 S.W.2d at 133.

Admittedly, at certain points during the writ hearing, Guevara testified that if the State had withdrawn all of its allegations except for the consumption of alcohol allegation — as he claims his attorney failed to ensure — he would not have accepted the plea or pled true. In response to a question from his attorney at the writ hearing, Guevara stated he would not have taken a felony plea "for drinking four beers," even though it was a violation of his probation; rather, he would have insisted on a hearing before the court to determine whether drinking four beers was grounds to revoke his deferred adjudication.

However, on cross-examination, Guevara admitted he knew that consuming four beers was a violation of the terms of his deferred adjudication probation, and that a violation could result in revocation and confinement. Soon after this admission, the following exchange occurred:

> Q [The State]: Okay. Let me put it to you this way, Mr. Guevara: I'm trying to understand what you're saying. Are you telling us today that back in '09 when we did the adjudication hearing, you would rather have gone in front of the Court and said, "Judge, I did consume four beers and I did go to Red Baron's Bar, and I would like to take my chances at a revocation hearing."?
>
> A [Guevara]: *I would have asked her [his attorney] to fight a different way, yes.*
>
> Q [The State]: *So what you're saying is you would rather have risked going to prison for two years than taking the plea to get probation?*
>
> A [Guevara]: *No.*
>
> Q [The State]: Well, then what are you saying?
>
> A [Guevara]: What I'm saying is the way I was explained that to me [sic], I would have had — if she would have said, "Look, Santos, we're going to do all this, you're

going to get a straight felony over four beers and not the assault charge," then I would have said, *"Okay, is there a different angle we can go at this and keep me on deferred instead of a straight felony"* –

Q [The State]: Okay.

A [Guevara]: — "on my record?"

Q [The State]: *And if her answer was "No, the State was wanting to send you to prison; this is the best deal I can make," what would you have said?*

A [Guevara]: *Back then, I have no idea. I'll be totally honest with you."*

Guevara then asserts he would have "fought it." And then later says, "I would have had her fight it a lot different than what she did fight." He does not explain what he meant by fighting it differently.

The record establishes Guevara's testimony with regard to whether he would have pled true but for counsel's alleged deficiencies is conflicting. He initially says on direct examination that if the State's only allegation had been he had consumed four beers in violation of the terms of his probation, he would have not pled true. Then, on cross-examination, he wavers, specifically stating he would not have wanted to risk two years' incarceration in light of a plea for probation. He then testifies not that he would not have pled true or accepted the plea, but that he would have had his attorney "fight it a different way," "fight it a lot different than what she did fight," never explaining what he expected her to do.

Based on the conflicting testimony, we hold the trial court was within its discretion to determine Guevara did not establish there was a reasonable probability that but for counsel's alleged errors he would not have pled true, insisting upon a full revocation hearing that would have subjected him to possible incarceration. *See Morrow*, 952 S.W.2d at 536.

**CONCLUSION**

Based on the foregoing, we hold the trial court did not err in denying Guevara's application. The trial court was within its discretion to determine Guevara did not establish by a preponderance of that counsel's performance was deficient or that Guevara was prejudiced by any alleged deficiency. We therefore overrule Guevara's issues and affirm the trial court's order denying the application for writ of habeas corpus.

Marialyn Barnard, Justice

Do Not Publish